EDWARD C. PRADO, Circuit Judge:
This is an appeal from a motion to suppress evidence arising from a traffic stop. Defendant-Appellant Joe Angel Castillo conditionally pleaded guilty to bringing in and harboring aliens in violation of 8 U.S.C. § 1324. Texas Department of Public Safety Officer Jeremiah Collins discovered three unauthorized aliens in the backseat of Castillo’s vehicle during a traffic stop on Highway 59 outside of Victoria, Texas. Collins claims that he stopped Castillo for driving in a left lane reserved for passing, in violation of Texas law. Castillo contends the stop violated the Fourth Amendment because Collins had no reasonable suspicion to believe Castillo committed this traffic infraction. He appeals the district court’s denial of his motion to suppress the evidence Collins acquired as a result of the stop. We affirm.
I. BACKGROUND
In the early morning hours of November 11, 2013, Officer Collins was conducting a traffic patrol on Highway 59 in Victoria County, Texas. He was parked at a gas station along the highway observing traffic when he saw a white Ford Explorer driving north in the left-most lane. A sign reading “left lane for passing only” is located 5.3 miles from where Collins first saw the Explorer. A video recorded by Collins’s dashboard camera at a later date indicates that Highway 59 North intersects several country roads and turnarounds as well as two entrance ramps in the stretch between the sign and Collins’s post at the gas- station.
Collins pulled out of the gas station to follow the car. He entered the highway and passed a handful of vehicles, and after about a minute and a half — approximately eight miles from the sign — he caught up with the Explorer, which was still driving in the left lane. Collins followed the vehicle for an additional three miles. Twice Collins pulled up beside the Explorer in the right-hand lane and then fell back again, to give it an opportunity to change lanes. The Explorer remained in the left lane. When Collins pulled alongside the Explorer, he noticed a young woman in the passenger seat with a “deer-eaught-in-the-headlights kind of look”. He thought he “possibly had a human trafficking case.”[1] Collins turned on his lights to pull over the *364 Explorer. When the passenger rolled down the window, Collins saw three people huddled between the back seat and the front seat on the floorboard. He identified the driver as Defendant-Appellant Castillo and the passenger as Giselle Lysette Gonzalez.
A federal grand jury indicted Castillo on one count of conspiring to transport aliens within the United States and three counts of transporting certain aliens within the United States, in violation of 8 U.S.C. § 1324. Castillo moved to suppress the evidence from the traffic stop, including the discovery of the undocumented passengers, as obtained in violation of the Fourth Amendment. The district court held an evidentiary hearing and denied the motion in a written opinion. Castillo pleaded guilty to the conspiracy count via a conditional plea agreement in which he reserved his right to appeal the district court’s ruling on the suppression motion. He was sentenced to eighteen months in prison, three years of supervised release, and a $100 special assessment. Castillo timely appealed.
II. DISCUSSION
The district court had jurisdiction over this federal criminal prosecution under 18 U.S.C. § 3231. We have jurisdiction to review the district court’s final judgment of conviction pursuant to 28 U.S.C. § 1291.
In evaluating a ruling on a motion to suppress, this Court reviews questions of law de novo and factual findings for clear error. United States v. Wright, 777 F.3d 769, 773 (5th Cir.), cert. denied, - U.S. -, 135 S.Ct. 2821, 192 L.Ed.2d 860 (2015). Whether an officer had reasonable suspicion to support a stop is treated as a question of law. See Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). The evidence is viewed in the light most favorable to the prevailing party in the district court — in this case, the Government. See United States v. McKinnon, 681 F.3d 203, 207 (5th Cir.2012) (per curiam). “[A] reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.” Ornelas, 517 U.S. at 699, 116 S.Ct. 1657.
The Government bears the burden of proving that Collins’s stop was supported by “a reasonable, articulable suspicion that criminal activity is afoot.” United States v. Jordan, 232 F.3d 447, 448 (5th Cir.2000); see also Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (“[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.”). “Although a mere hunch does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause.” Navarette v. California, — U.S.-, 134 S.Ct. 1683, 1687, 188 L.Ed.2d 680 (2014) (citations and internal quotation marks omitted). “In determining whether the officer’s suspicion, as based on specific and articulable facts, was reasonable, the totality of the circumstances must be considered.” United States v. Hill, 752 F.3d 1029, 1033 (5th Cir.2014) (citing United States v. Arvizu, 534 U.S. 266, 273-74, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)). A traffic violation provides officers with authority for an investigative stop. United States v. Sanchez-Pena, 336 F.3d 431, 437 (5th Cir.2003).
*365 Here, Collins asserts that he stopped Castillo on reasonable suspicion that he was driving in the left lane without passing, in violation of Texas law. Left-lane driving is regulated via the sign-compliance provision of the Texas Transportation Code:
(a) The operator of a vehicle ... shall comply with an applicable official traffic-control device placed as provided by this subtitle____
(b) A provision of this subtitle requiring an official traffic-control device may not be enforced against an alleged violator if at the time and place of the alleged violation the device is not in proper position and sufficiently legible to an ordinarily observant person.
Tex. Transp. Code § 544.004.
The Texas Court of Criminal Appeals has authoritatively interpreted this provision of the transportation code as applied to a “left lane for passing only” sign. Abney v. State, 394 S.W.3d 542, 548 (Tex.Crim.App.2013). For a driver in the left lane to violate the sign-compliance provision, he must have notice, i.e., there must be a sign “within a reasonable distance of the traffic stop.”[2] Id. The Abney court reasoned that because signs are intended to provide drivers “with notice of traffic laws or regulations,” they are required to be “at or near where the regulations apply.” Id. at 549. However, because “there are no specific guidelines for the spacing of the ‘left lane for passing only' signs,” courts must determine “whether such a sign is applicable on the facts of each case.” Id. at 549-50 (emphasis added).
Applying this principle, the Abney court reversed the trial court’s denial of a motion to suppress evidence obtained as a result of a left-lane-violation traffic stop. Id. at 550. A “left lane for passing only” sign was located “about fifteen to twenty miles” from where the officer first observed the defendant. Id. at 545. The officer followed the defendant for approximately one mile before making the stop. Id. at 544. Defense counsel made a credible argument that the defendant had been driving in the left lane in order to make a U-turn using the available crossover and had not seen the sign. Id. at 545. The Court of Criminal Appeals concluded that the facts did not support a finding of reasonable suspicion under Texas law. Id. at 549-50.
In contrast, Texas courts have found valid stops that occurred between three and six miles from a sign. The Texarkana Court of Appeals found a stop was supported by reasonable suspicion in Mouton v. State, 101 S.W.3d 686, 690 (Tex.App.— Texarkana 2003, no pet.). The officer pulled over the defendant after following him for “at least a mile.” Id. There was evidence that “left lane for passing only signs” appeared three or four miles from the stop. Id. Similarly, in Baker v. State, 50 S.W.3d 143 (Tex.App. — Eastland 2001, pet. ref d), the Eastland Court of Appeals approved a stop that took place approximately six miles past a “left lane for pass *366 ing only sign.” 50 S.W.3d at 145-46.[3] The officer testified that the car did not timely move to the right-hand lane after passing the officer, but rather continued to travel in the left lane for a distance between one quarter and three quarters of a mile. Id. at 145.
Castillo relies principally on a federal district court opinion that placed heavy emphasis on the presence of entrance ramps between the sign and the site of the stop. United States v. Garcia, 976 F.Supp.2d 856 (N.D.Tex.2013). In Garcia, the defendant challenged a traffic stop that took place north of Waco, Texas. Id. at 859. The officer did not see the defendant enter the highway or drive past the “left lane for passing only” sign. Id. at 864. The nearest sign was five miles behind the site of the stop, and there were three on-ramps along that five-mile stretch. Id. The' court concluded that “the existence of entrances onto the highway between a traffic sign and the location of the stop undermines any inference that the motorist passed the sign, unless of course the officer knew that all three on-ramps were closed or temporarily blocked.” Id. (emphasis added).[4] Reasoning from Garcia, Castillo contends that Collins could not have had reasonable suspicion to stop his vehicle because there were several on- and off-ramps between the sign and the site of the stop.
We are not persuaded by Garcia’s suggestion that an officer must have specific knowledge that the suspect passed the sign. See 976 F.Supp.2d at 864 (concluding the officer lacked reasonable suspicion because he “had absolutely no way of knowing when [the defendant] entered the highway”). To conclude that an officer does not have reasonable suspicion unless he knows the defendant passed the sign is essentially to require certainty that a violation occurred. This would raise the standard for reasonable suspicion far above probable cause or even a preponderance of the evidence, in contravention of the Supreme Court’s instructions. See Naverette, 134 S.Ct. at 1687 (“[T]he level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause.” (internal quotation marks omitted)).
Rather, we follow Abney, Mouton, and Baker and conclude that a court must “determine, based on the statute, whether [a] sign is applicable on the facts of each case,” Abney, 394 S.W.3d at 549-50 (emphasis added). Here, Collins first observed Castillo 5.3 miles from the closest sign — far short of Abney’s fifteen-to-twenty miles and between Baker’s six and Mouton’s four. Collins observed Castillo for several minutes, like in Baker, and allowed an opportunity for Castillo to change lanes, like in Mouton and unlike in Garcia. Finally, unlike in Abney, Castillo advanced no credible alternative reason for driving in the left lane. All three cases support the conclusion that Collins had *367 reason to suspect Castillo was committing a traffic infraction.
Castillo argues that, except for Collins’s testimony and the dashboard-camera video, the Government introduced no evidence about “(1) the traffic patterns on U.S. Highway 59 in general, on the stretch of highway at issue here, or on the several country roads that access the stretch of highway between the posted sign and where the trooper observed the vehicle” or “(2) how many vehicles used the several turnarounds and at least one true exit ramp on that stretch of highway.” As Castillo points out, the Government “did not elicit testimony or present other evidence about the population of the area, or how many ranches, homes, or businesses, for example, are located in the area.” Finally, even at 12:30 a.m., Castillo notes, Collins had to weave in and out of traffic to get to the Explorer.
However, courts are instructed to defer to “resident judges and local law enforcement” in their assessment of the relevant facts. Ornelas, 517 U.S. at 699, 116 S.Ct. 1657. Here, the relevant facts include the typical traffic flow on Highway 59 and the likelihood that a ear on that stretch of road would have been traveling a long distance rather than a short one. Castillo has not shown clear error in the district court’s factual conclusion that the percentage of “vehicles driving on U.S. 59 at the exact point where Collins first observed the Explorer [that] had passed the sign located 5.3 miles behind them” is “over 50% and likely much higher.” The court based this determination on the dashboard-camera video of the night in question, which shows only a handful of trucks and cars on the road prior to the stop. It also relied on Collins’s testimony that he observed the Explorer for several minutes and offered the Explorer the opportunity to change lanes. Finally, the court rested on its own observation that, although “Highway 59 is a major highway linking the border town of Laredo to Houston,” “[t]his 5.3 mile stretch of U.S. 59 does not pass through heavily populated areas, unlike the parts of U.S. 59 that are in Houston.” The dashboard video, “combined with [Collins’s] testimony at the suppression hearing, show[s] that there are few heavily travelled routes that enter U.S. 59 after the ‘Passing Only’ sign and before Collins first observed the Explorer.”
Reasonable suspicion is a low threshold, requiring that an official have “ ‘some minimal level of objective justification’ for making the stop.” United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting INS v. Delgado, 446 U.S. 210, 217, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984)). The court’s conclusion that it was more likely than not that Castillo’s ear passed the sign takes into account the totality of the circumstances and evaluates the Government’s justification for specific, articulable facts. See Hill, 752 F.3d at 1033. The court’s “finding of historical fact” is not clearly erroneous, see Ornelas, 517 U.S. at 699, 116 S.Ct. 1657, and therefore we grant it deference. On these facts, we conclude that Collins had reasonable suspicion to stop Castillo.
III. CONCLUSION
For the foregoing reasons, we AFFIRM the district court’s denial of Castillo’s motion to suppress.

. The Government does not advance this argument on appeal, stating: "Given the insufficiently developed record on this issue in the district court, the United States does not rely on this alternative ground in seeking affir-mance.” (citing United States v. Aguirre, 664 F.3d 606, 610 (5th Cir.2011)).

. We note that our decision is in tension with a prior panel's unpublished decision in United States v. Castro, 480 Fed.Appx. 782, 784 (5th Cir.2012) (per curiam). We are not bound to apply Castro because Castro was an unpublished case decided on plain error. We are, however, bound by the decisions of the Texas court of last resort on criminal matters, and we are therefore obligated to follow its interpretation of the Texas Transportation Code. Because Castro was decided on plain error and the Texas Court of Criminal Appeal subsequently authoritatively interpreted section 544.004 of the Texas Transportation Code as applied to “left lane for passing only” signs in Abney, we construe section 544.004 in accordance with Abney, not Castro.

. The Court of Appeals did no reasonable-suspicion analysis in this pre-Abney decision, focusing instead on upholding this provision of the traffic code against a vagueness challenge. See Baker, 50 S.W.3d at 145-46. Nevertheless, this decision was cited approvingly by the Texas Court of Criminal Appeals in Abney, 394 S.W.3d at 549 ("These facts were specific and provided ... reasonable suspicion. ...”).

. The court also noted that the officer did not allow enough time to elapse between observing the defendant's driving and pulling him over: the officer decided to make a stop within twenty-five seconds of seeing the defendant's truck and running its plates. Garcia, 976 F.Supp.2d at 865. The officer observed the defendant for one mile, and the defendant was in the process of passing a large truck when the officer pulled him over. Id. at 860.