**REVISED May 9, 2017**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-40817

United States Court of Appeals
Fifth Circuit

**FILED**

April 28, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

CECILIO ANTONIO BROCA-MARTINEZ,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before KING, JOLLY, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Defendant–Appellant Cecilio Broca-Martinez appeals the district court's denial of his motion to suppress. While on patrol in December 2015, Officer Juan Leal began following Broca-Martinez's vehicle because it matched a description Homeland Security agents had provided the Laredo Police Department ("LPD"). Officer Leal stopped Broca-Martinez after a computer search indicated the vehicle's insurance status was "unconfirmed." The stop led to the discovery that Broca-Martinez was in the country illegally and that he was harboring undocumented immigrants at his residence. Broca-Martinez

entered a conditional guilty plea to one count of conspiracy to transport undocumented aliens in violation of 8 U.S.C. § 1324. On appeal, he contends that there was no reasonable suspicion justifying the initial stop. Because we find there was reasonable suspicion, we AFFIRM.

## I. BACKGROUND

On December 2, 2015, Broca-Martinez was stopped by Officer Leal in Laredo, Texas. That day, Homeland Security Investigations ("HSI") received a tip that undocumented immigrants were being housed at a residence on Zacatecas Avenue in Laredo. While surveilling the residence, HSI agents saw two men leave and enter a gray Nissan Altima. HSI subsequently notified the LPD to have its officers "be on the lookout" for the vehicle. After receiving a radio transmission to "be on the lookout" for this vehicle, Officer Leal saw an Altima that matched the description. He followed the vehicle and entered its license plate number into an "in-vehicle computer" database designed to return vehicle information such as insurance status. The computer indicated the insurance status was "unconfirmed." Based on his experience using this system, Officer Leal concluded that the vehicle was likely uninsured—a violation of Texas's driver financial responsibility law. Official Leal then stopped the vehicle. After being stopped, Broca-Martinez gave his name to Officer Leal and admitted he was in the United States illegally. While they waited for HSI agents to arrive, Officer Leal issued Broca-Martinez a citation for violating the insurance requirement and driving without a license.

When HSI agents arrived, they interviewed Broca-Martinez. The agents obtained verbal consent from Broca-Martinez to search the Zacatecas Avenue residence, where fourteen undocumented immigrants were being sheltered. On December 22, 2015, Broca-Martinez was indicted by a grand jury on three counts of conspiring to harbor illegal aliens in violation of 8 U.S.C. § 1324. Broca-Martinez filed a motion to suppress evidence on January 25, 2016. He

argued there was no reasonable suspicion justifying the initial stop and that the exclusionary rule barred all evidence obtained as a result of the stop.[1]

Officer Leal testified to the following at a hearing on the motion to suppress: At the time of the stop, Leal knew the radio-transmission instruction involved a Homeland Security investigation but was unaware of any details. Upon seeing a vehicle that matched the given description, he ran the "license plates through what is called the NCIC/TCIC system, which gives a return on the vehicle, make, model, [and] year" as well as "a VIN number" and "a confirmation to see if the vehicle is insured." Officer Leal has in the past "performed multiple traffic stops for vehicles not having insurance" and was familiar with the Texas law requiring drivers to have liability insurance. Leal did not stop the vehicle because of Broca-Martinez's undocumented status—a fact he did not know—but because he believed Broca-Martinez was uninsured. He explained that when he types a license plate number into the NCIC/TCIC system, it will either report "insurance confirmed" or "unconfirmed," and after getting a response he knows, "with the knowledge and experience of working," whether the vehicle is uninsured.

During the stop, Officer Leal did not ask for proof of insurance. He stated that he "already knew that the vehicle wasn't insured" based on the "unconfirmed" status generated by the computer. However, the district court questioned why Officer Leal did not seek to confirm the computer's report, asking specifically whether "reports are sometimes inaccurate." Leal responded: "For the most part, no." Later, Broca-Martinez's attorney pressed Officer Leal on the "unconfirmed" status:

---

[1] In a separate motion, Broca-Martinez raised a *Miranda* violation. The district court denied both motions to suppress. However, Broca-Martinez does not address the *Miranda* issue in his brief.

Q: Officer Leal, you said that the information you got on the insurance is that it was unconfirmed?
A: Yes.
Q: So, in other words, he could have or not have insurance, correct?
A: No.
Q: It's unconfirmed?
A: Yes.

The district court denied Broca-Martinez's motion to suppress. Broca-Martinez entered a conditional plea to one count of conspiracy to transport undocumented aliens in violation of 8 U.S.C. § 1324. Broca-Martinez preserved his right to appeal the district court's denial of his motion to suppress. On June 8, 2016, Broca-Martinez was sentenced to twelve months and one day imprisonment. He timely appealed.

## II. STANDARD OF REVIEW AND JURISDICTION

"In reviewing a district court's denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law de novo." *United States v. Lopez-Moreno*, 420 F.3d 420, 429 (5th Cir. 2005). "Whether an officer had reasonable suspicion to support a stop is treated as a question of law." *United States v. Castillo*, 804 F.3d 361, 364 (5th Cir. 2015). Nonetheless, this Court views the evidence "in the light most favorable to the prevailing party in the district court—in this case, the Government." *Id.* The district court had jurisdiction under 18 U.S.C. § 3231, and this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## III. DISCUSSION

Under Texas law, "[a] person may not operate a motor vehicle in [Texas] unless financial responsibility is established for that vehicle through" either a "motor vehicle liability insurance policy" or other means such a surety bond, a deposit, or self-insurance. Tex. Transp. Code Ann. § 601.051. Violating this statute is a misdemeanor. *Id.* § 601.191. At issue in this case is whether Officer

4

Leal had reasonable suspicion that Broca-Martinez was in violation of this statute.[2]

The Fourth Amendment protects individuals against warrantless searches and seizures. U.S. Const. amend. IV. It "applies to seizures of the person, including brief investigatory stops such as the stop of the vehicle here." *United States v. Cortez*, 449 U.S. 411, 417 (1981). When a vehicle is stopped, the officer "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* at 417–18. This "reasonable suspicion exists "when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure." *Lopez-Moreno*, 420 F.3d at 430. And while the officer must have more than a "mere hunch" that the person stopped is engaged in illegal activity, "reasonable suspicion need not rise to the level of probable cause." *Id.* Indeed, it requires only "'some minimal level of objective justification' for making the stop." *Castillo*, 804 F.3d at 367 (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

We have not yet addressed whether a state computer database indication of insurance status may establish reasonable suspicion. However, several other circuits have found that such information may give rise to reasonable suspicion as long as there is either some evidence suggesting the database is reliable or at least an absence of evidence that it is unreliable.

In *United States v. Cortez-Galaviz*, 495 F.3d 1203 (10th Cir. 2007), the Tenth Circuit encountered similar facts and affirmed the denial of a motion to suppress. *Id.* at 1204. In that case, a Drug Enforcement Agency agent stopped a vehicle after inputting its license plate information into a computer database

---

[2] Broca-Martinez acknowledges that the only reason for the stop was a traffic violation and that Officer Leal "had no information regarding any suspicion of any criminal activity by the passengers" in the vehicle.

and receiving the following notification: "INSURED/Not Found: AS OF/9/30/2005 Recommend request proof of insurance." *Id.* The court found this information was "particularized and objective" and "suggestive of a traffic violation." *Id.* at 1206. While acknowledging that the message "did not as definitively indicate criminal activity as a 'no' response," it also did not "equate to an exculpatory 'yes,' and the suggestive ambiguity of the particularized and objective information [the officer] had at hand justified his decision to warrant a brief traffic stop." *Id.* Like Broca-Martinez, the defendant in *Cortez-Galaviz* argued that the stop was not justified because there were alternative means of complying with the state insurance law. *Id.* at 1207. But the Tenth Circuit found that argument "overstate[d] the requirements for reasonable suspicion under the Fourth Amendment." *Id*; *see also United States v. Miranda-Sotolongo*, 827 F.3d 663, 669 (7th Cir. 2016) ("Reasonable suspicion . . . does not require the officer to rule out all innocent explanations of what he sees."). Additionally, although the defendant in *Cortez-Galaviz* challenged the reliability of the computer database, the court found limited evidence of unreliability, especially when viewed in the light most favorable to the government. 495 F.3d at 1208.

By contrast, the Tenth Circuit reached a different conclusion in *United States v. Esquivel-Rios*, 725 F.3d 1231 (10th Cir. 2013), where there *was* evidence the database was unreliable. In that case, a Colorado state trooper stopped a vehicle after inquiring into the validity of its temporary registration tag. *Id.* at 1234. Even though the tag "looked genuine," the trooper "called in the tag number to a dispatcher who soon replied 'that's a negatory on record, not returning.'" *Id.* The trooper stopped the vehicle solely based on that information and found illegal drugs after obtaining consent for a search. *Id.* at 1234–35. On appeal, the Tenth Circuit found this case distinguishable from *Cortez-Galaviz* and other cases in which "the record suggested no reason to

6

worry about the database's reliability." *Id.* at 1235. Here, the dispatcher provided critical testimony that "*Colorado temp tags usually don't return*," which the court regarded as "a piece of evidence our cases haven't confronted before: evidence admitted by a district court suggesting that the database on which the officer relied to justify his stop might bear a real problem." *Id.* (emphasis in original).

Cases from the Seventh, Sixth, and Eighth Circuits confronting similar fact patterns are generally consistent with the reasoning in *Cortez-Galaviz* and *Esquivel-Rios*. *See Miranda-Sotolongo*, 827 F.3d at 671 (finding reasonable suspicion established when the database showed no vehicle registration record, "at least in the absence of evidence that [the officer] could not reasonably rely on the absence of a registration record to support an investigative stop"); *United States v. Sandridge*, 385 F.3d 1032, 1036 (6th Cir. 2004) (concluding there was reasonable suspicion for a stop when license plate check three weeks prior had indicated the driver was driving without a valid license); *United States v. Stephens*, 350 F.3d 778, 779 (8th Cir. 2003) (holding that when database check showed license plates were "not on file," there was reasonable suspicion to stop the vehicle).[3]

Broca-Martinez relies only on state court cases to support his argument. *See Gonzalez-Gilando v. State,* 306 S.W.3d 893, 896–97 (Tex. App.—Amarillo

---

[3] A district court in Texas also recently found reasonable suspicion for a vehicle stop when a computer database search returned an "unconfirmed" insurance status. *United States v. Vela*, No. 2:15-CR-429, 2016 WL 305219, at *1–2 (S.D. Tex. Jan. 25, 2016). In that case, an officer typed the vehicle's license plate into a Mobile Data Terminal ("MDT") to determine insurance status and received the "unconfirmed" notification. *Id.* at *1. At a hearing on the motion to suppress, two officers "testified that they regularly use[d] the MDT to determine if a vehicle is insured, and such a search will result in either a 'confirmed' or an 'unconfirmed' insurance status." *Id.* They further testified that "[i]n their experience, 80% to 85% of the vehicles that have an 'unconfirmed' insurance status do not have valid insurance" and that while "unconfirmed" occasionally means the vehicle was insured very recently, the database was generally accurate and reliable. *Id.*

2010, pet. ref'd) (finding database information insufficient to establish reasonable suspicion because there was no "evidence developing the source of the information comprising the database, explaining what was meant when insurance information was unavailable, . . . [or] illustrating the accuracy of the database"); *State v. Daniel*, 446 S.W.3d 809, 815 (Tex. App.—San Antonio 2014, no pet.); *Contraras v. State*, 309 S.W.3d 168, 173 (Tex. App.—Amarillo 2010, pet. ref'd).[4] But although states may "impos[e] more stringent constraints on police conduct than does the Federal Constitution," this does not dictate our Fourth Amendment analysis. *California v. Greenwood*, 486 U.S. 35, 43 (1988). Even so, Broca-Martinez's case is distinguishable from *Gonzalez-Gilando*; here, there was testimony regarding Officer Leal's experience with the database and suggesting the system was reliable.

We agree with the other circuits that have confronted this question. A state computer database indication of insurance status may establish reasonable suspicion when the officer is familiar with the database and the system itself is reliable. If that is the case, a seemingly inconclusive report such as "unconfirmed" will be a specific and articulable fact that supports a traffic stop. *Lopez-Moreno*, 420 F.3d at 430. Viewed in the light most favorable to the government, Officer Leal's testimony provides sufficient support for the reliability of the database. Officer Leal explained the process for inputting license plate information, described how records in the database are kept, and noted that he was familiar with these records. He explained that "with the

---

[4] Notably, some unpublished state court opinions have declined to follow *Gonzalez-Gilando* and favor the government's position. *See Swadley v. State*, No. 02-15-00085-CR, 2016 WL 7241564, at *6 (Tex. App.—Fort Worth Dec. 15, 2016, no pet.) (mem. op., not designated for publication); *Tellez v. State*, No. 09-10-00348-CR, 2011 WL 3925627, at *3 (Tex. App.—Beaumont Aug. 14, 2011, no pet.) (mem. op., not designated for publication); *Short v. State*, No. 09-10-00489-CR, 2011 WL 3505611, at *3 (Tex. App.—Beaumont Aug. 10, 2011, no pet.) (mem. op., not designated for publication).

knowledge and experience of working," he knows the vehicle is uninsured when an "unconfirmed" status appears because the computer system will either return an "insurance confirmed" or "unconfirmed" response. When Broca-Martinez's attorney questioned the system's reliability, Officer Leal confirmed that it was usually accurate. ("Q: So, in other words, he could have or not have insurance, correct? A: No.") ("Q: You asked him for his insurance? A: Not that I recall. I already knew that the vehicle wasn't insured.") ("Q: I mean reports are sometimes inaccurate, right? A: For the most part, no.").

Even if Officer Leal was not positive Broca-Martinez was uninsured, he cleared the bar for reasonable suspicion. An officer does not have to be certain a violation has occurred. *See Castillo*, 804 F.3d at 366. "This would raise the standard for reasonable suspicion far above probable cause or even a preponderance of the evidence, in contravention of the Supreme Court's instructions." *Id.*

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the denial of Broca-Martinez's motion to suppress and AFFIRM Broca-Martinez's conviction and sentence.