# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
December 18, 2020

Lyle W. Cayce
Clerk

No. 20–40171
Summary Calendar

United States of America,

*Plaintiff—Appellee*,

*versus*

Sherlock Alvarez,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:19–CR–352–4

Before Davis, Stewart, and Dennis, *Circuit Judges*.

Per Curiam:*

Sherlock Alvarez pleaded guilty, pursuant to a conditional plea agreement, to making a false statement in connection with the acquisition of a firearm and was sentenced to six months of imprisonment. He argues that

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20–40171

the district court erred in denying his motion to suppress evidence. We AFFIRM.

## I. Facts & Procedural History

Alvarez was charged in a superseding indictment with conspiracy to make a false statement during the purchase of a firearm (Count One) and making a false statement during the purchase of a firearm (Count Eight). Alvarez filed a motion to suppress all evidence discovered and statements made during the traffic stop that led to his arrest.

A suppression hearing was held before a magistrate judge. James Medina, a police officer, and Agent Ramon Roldan, an agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), testified about the traffic stop and arrest. Officer Medina received a call indicating that a passenger in a white Ford Mustang had possibly purchased a firearm. He followed the Mustang and pulled it over after he observed the driver committing a traffic violation. Alvarez and another individual were in the backseat of the vehicle, co-defendant Carlo Salazar was in the front passenger seat, and co-defendant Sergio Perez was the driver. Perez initially told Officer Medina that there were no drugs or weapons in the vehicle, but soon after told him that he had just purchased a firearm and placed it in the trunk of the car. After obtaining Perez's consent, Officer Medina opened the trunk and observed a box big enough to hold a large weapon. Officer Medina called Sergeant Luna, an ATF agent, to inform him that there was a gun in the vehicle. Salazar told Officer Medina that he purchased the rifle for protection, which Officer Medina thought was implausible as he believed rifles were not typically purchased for protection.

After this point, Sergeant Luna arrived at the scene and contacted ATF. The officers asked the passengers to exit. When ATF agents arrived, they walked with Salazar to an open grassy area to begin discussions with each

No. 20–40171

of the vehicle's occupants, without giving *Miranda* warnings. Agent Roldan testified that he had observed Salazar, who appeared to be a young teenager, nervously leaving a gun store. Agent Roldan testified that, in his experience, there was a pattern of individuals recruiting teenagers to purchase firearms that end up in Mexico, also known as "straw purchases." The agents interviewed the passengers and decided to transport them to the police station.

The magistrate judge issued a Report and Recommendation. In it, she determined that Officer Medina's reasonable suspicion of a traffic violation supported the initial stop, that the duration of the stop was reasonable, and that the roadside questioning was not a custodial interrogation requiring *Miranda* warnings. Accordingly, the magistrate judge recommended that Alvarez's motion to suppress be denied. After its independent review, the district court denied Alvarez's motion.

Pursuant to a conditional plea agreement, Alvarez pleaded guilty to Count Eight of the superseding indictment. As part of the agreement, he reserved the right to appeal the denial of his motion to suppress. The district court accepted the plea and sentenced Alvarez to six months of imprisonment, followed by three years of supervised release, including six months of home confinement. Alvarez appeals.

## II. Standard of Review

On appeal from a district court's ruling on a motion to suppress, this court reviews factual findings for clear error and its conclusions of law de novo, viewing the evidence in the light most favorable to the prevailing party. *United States v. Pack*, 612 F.3d 341, 347 (5th Cir. 2010), *modified on other grounds on denial of reh'g*, 622 F.3d 383 (5th Cir. 2010). "Factual findings are clearly erroneous only if a review of the record leaves [us] with a definite and firm conviction that a mistake has been committed." *United States v. Hearn*,

No. 20–40171

563 F.3d 95, 101 (5th Cir. 2009) (internal quotation marks omitted). Whether the record demonstrates reasonable suspicion is a question of law that we review de novo. *United States v. Jaquez*, 421 F.3d 338, 341 (5th Cir. 2005). Likewise, the question of "whether *Miranda*'s guarantees have been impermissibly denied to a criminal defendant, assuming the facts as established by the trial court are not clearly erroneous, is a matter of constitutional law, meriting de novo review." *United States v. Harrell*, 894 F.2d 120, 122–23 (5th Cir. 1990).

### III. Discussion

By failing to adequately brief the issue, Alvarez has abandoned any argument that the initial stop based on a suspected traffic violation was unconstitutional.[1] *See United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010) (noting that a party waives an argument by failing to adequately brief it on appeal, and that it is insufficient to merely mention a legal theory).

Alvarez argues that the stop was unduly prolonged. He maintains that Officer Medina did not have adequate information at the time that the computer checks came back clean to provide reasonable suspicion necessary to prolong the detention. As part of a traffic stop, an officer can request "a driver's license and vehicle registration . . . and . . . run a computer check on both." *United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004). An officer may also seek to identify and run computer checks on passengers and ask questions about the purpose and itinerary of the trip, or ask questions on subjects completely unrelated to the circumstances that caused the stop if such questions do not extend the stop's duration. *Pack*, 612 F.3d at 350–51. "If the officer develops reasonable suspicion of additional criminal activity

---

[1] The only mention Alvarez makes of the validity of the stop at its inception is the following phrase: "Even if the original basis for the stop was justified, . . ."

4

No. 20–40171

during his investigation of the circumstances that originally caused the stop, he may further detain [the vehicle's] occupants for a reasonable time while appropriately attempting to dispel this reasonable suspicion." *Id.* at 350. "Reasonable suspicion is a low threshold and requires only some minimal level of objective justification." *United States v. Castillo*, 804 F.3d 361, 367 (5th Cir. 2015) (internal quotation marks omitted).

We agree with the district court that Officer Medina had reasonable suspicion to prolong the stop. Officer Medina had received a report that a passenger in the Mustang had possibly just purchased a weapon. Officer Medina testified that Perez and Salazar both initially misrepresented that there was not a weapon in the car. He also doubted Salazar's claim that he bought an AR–type rifle for protection. An untruthful answer can "create[] further suspicion justifying continued detention." *United States v. Andres*, 703 F.3d 828, 834 (5th Cir. 2013). Further, Officer Medina explained that he knew ATF was investigating possible illegal firearms purchases made by passengers in a white vehicle. Taken together, these factors are adequate to provide reasonable suspicion of criminal wrongdoing. Officer Medina had knowledge of all these factors by the time he finished running the four passengers' information. The stop was not unreasonably prolonged.

Alvarez also argues that he should have been *Mirandized* before officers conducted a field interrogation. Incriminating statements made by a suspect during a custodial interrogation when they have not first received *Miranda* warnings generally are inadmissible. *Missouri v. Seibert*, 542 U.S. 600, 608 (2004). Whether a suspect is in custody for *Miranda* purposes is an objective determination that looks to (1) the circumstances surrounding the interrogation, and (2) whether, given the circumstances, "a reasonable person [would] have felt he or she was at liberty to terminate the interrogation and leave." *United States v. Wright*, 777 F.3d 769, 774 (5th Cir. 2015) (internal quotation marks omitted). This court has considered key

factors in considering whether or not an individual was in custody, including (1) "the length of the questioning"; (2) "the location of the questioning"; (3) "the accusatory, or non–accusatory, nature of the questioning"; (4) "the amount of restraint on the individual's physical movement"; and (5) "statements made by officers regarding the individual's freedom to move or leave." *Id.* at 775.

Here, the magistrate judge weighed all of the foregoing factors against Alvarez, specifically reasoning that (1) although the detention lasted about an hour, Alvarez was one of four suspects and was only questioned for a short period of time; (2) the questioning took place in an open–air location beside a heavily trafficked highway; (3) the open–ended questions directed at Alvarez were non–accusatory; (4) Alvarez was standing out in the open and was not physically restrained; and (5) no statements were made demonstrating that Alvarez was not free to leave or that he was required to answer the agents' questions. After agreeing with one of Alvarez's objections, the district court ultimately concluded that four of the five factors demonstrated that he was not in custody, and that one factor, the lack of statements made by officers about Alvarez's freedom to leave, was neutral.

Alvarez cites to two cases where the Supreme Court determined that police questioning amounted to a custodial interrogation, neither of which involved similar circumstances. *See Florida v. Royer*, 460 U.S. 491, 503–06 (1983) (holding that a suspect was effectively seized after police retrieved his checked baggage from the airline without his consent and asked him to accompany them to a room for an airport interrogation); *Dunaway v. New York*, 442 U.S. 200, 203, 218–19 (1979) (holding that a suspect was arrested when he was taken by police car from a house to a police station interrogation room without probable cause). Alvarez additionally argues that the questioning was custodial as he was forced out of the car and that the officers and agents did not inform him that he was free to leave or that he was cleared

by the warrant check. There is no hard-and-fast requirement that a suspect be told that he is free to leave in a non-custodial interview, and some amount of restraint is permissible. *See United States v. Ortiz*, 781 F.3d 221, 230 (5th Cir. 2015) (holding that a suspect was not in custody where he was not explicitly told he was free to leave, was briefly handcuffed during a frisk, and was questioned in a police vehicle in a public place). We agree with the district court's assessment of the five factors. The district court did not err in determining that the interview of Alvarez was not custodial and that *Miranda* warnings were not required.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the district court's denial of Alvarez's motion to suppress.