# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

PATRICK MAZZIE,

Defendant-Appellee.

FOR PUBLICATION
October 23, 2018
9:20 a.m.

No. 343380
Monroe Circuit Court
LC No. 17-244015-FH;
17-244016-FH

Before: MURRAY, C.J., and BORRELLO and RONAYNE KRAUSE, JJ.

MURRAY, C.J.

Defendant was a passenger in a vehicle that was pulled over, and then searched by, city of Monroe police officers. Subsequent to charges[1] being filed against him, defendant moved to suppress any evidence obtained from the search of the vehicle. According to testimony at the suppression hearing, at least twice per month, the Secretary of State sends information to the Law Enforcement Information Network (LEIN) regarding whether vehicles are insured, as they are required to be by state law. MCL 500.3102. Testimony also established that city of Monroe police officers routinely pull vehicles over if the LEIN indicates the vehicle is not insured. After the suppression hearing, the trial court granted defendant's motion to suppress on the basis that the insurance information did not provide the officers with reasonable suspicion that a motor vehicle code violation existed because the information was not reliable, and the Secretary of State violated state law in supplying the insurance information to the LEIN system. An order was then entered in both cases suppressing any evidence arising from the search and seizure of the vehicle. We granted leave to appeal to determine whether the trial court erred in granting defendant's motion to suppress, *People v Mazzie*, unpublished order of the Court of Appeals, entered May 24, 2018 (Docket No. 343380), and now reverse.

---

[1] In Case No. 17-244015-FH, defendant was charged with one count of possession with intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*), while in Case No. 17-244016-FH, defendant was charged with one count of possession with intent to deliver less than 50 grams of cocaine, one count of receiving and concealing $1,000 or more, but less than $20,000, of stolen property, MCL 750.535(3)(a), and one count of maintaining a drug house, MCL 333.7405(1)(d).

-1-

## I. FACTS AND PROCEEDINGS

On June 22, 2017, Monroe Police Lieutenant Derek Lindsay and Detectives Aaron Oetjens and Michael Merkle participated in a traffic stop of a vehicle in which defendant was the front seat passenger. The basis for the traffic stop was a LEIN search that indicated that the vehicle did not have insurance. Paul Sanders, the driver of the vehicle that Lieutenant Lindsay stopped, provided Lieutenant Lindsay with insurance information, but the insurance had been cancelled. Thus, the vehicle did not have insurance. Upon searching the vehicle, the officers found small pieces of "an off-white chunky substance" scattered throughout the vehicle, which tested positive for cocaine. The officers also recovered defendant's cellular telephone from defendant's person, and found "photos of large amounts of money spread out with a scale and then what looked to be cocaine - - crack cocaine on a table and other drugs." Defendant was arrested thereafter, but was subsequently released pending these trials.

Forensic analysis of the photographs found on defendant's cell phone provided police with the address in Monroe. A search warrant for that location was issued on September 21, 2017, based in part on the drugs and photographs obtained as a result of the June 22, 2017 traffic stop. That same day, Lieutenant Lindsay and Detectives Merkle and Oetjens participated in the execution of the warrant. When police arrived, defendant was sitting on the back porch and several individuals, including Charles Laney, defendant's codefendant in Case No. 17-244016-FH,[2] were inside the home when the police entered. While searching the home, detectives found powder that tested positive for cocaine, several items associated with the manufacture and delivery of cocaine, an item typically used to carry heroin, and several items that appeared to be stolen. Inside a bedroom police located items associated with the manufacture and delivery of cocaine, as well as paperwork with defendant's name on it. Defendant's wallet was found in the house's kitchen. As a result of this evidence, defendant was arrested a second time.

After he was charged in these two cases, defendant filed a motion to suppress the evidence obtained as a result of the traffic stop and to dismiss both cases against him, setting forth several arguments: (1) the officers did not have reasonable suspicion to stop the vehicle, as the LEIN insurance check did not justify the stop, (2) the Secretary of State, who maintains the database on insurance policy information, does not update the database in a timely fashion, (3) an internal Michigan State Police memorandum instructed state troopers not to initiate a traffic stop or arrest an individual for operating a vehicle without insurance based solely on a no-insurance message on the LEIN, and (4) the Secretary of State's provisioning of insurance policy information to the LEIN was not authorized and violated the confidentiality requirements in MCL 257.227(4).

The trial court held an evidentiary hearing on defendant's motion to suppress the evidence obtained from the traffic stop. During the hearing, uncontested testimony established that when Monroe officers performed a LEIN search they would receive the following information: license plate number, the vehicle make, model, and year, the vehicle identification

---

[2] Case No. 17-244016-FH pertains to the drugs found in the house through execution of the search warrant.

number (VIN), the expiration date on the tab, who the vehicle is registered to, that individual's address, and an electronic insurance verification (EIV) message that has either a "Y" for yes, or a "N" for no, next to it, i.e., the message would read "EIV=Y" or "EIV=N." Monroe County Sheriff's Deputy Brian Quinn, an officer who primarily conducts traffic stops, indicated that when he conducts a LEIN search of a license plate, the Secretary of State sends a message with the vehicle's information, the expiration date for the vehicle's plate, and whether the vehicle's insurance is verified. Deputy Quinn indicated that "insurance companies have to verify with the Secretary of State twice a month on the first and the 15th that a vehicle is covered with vehicle insurance." Deputy Quinn also verified that no additional information from the insurer relative to each vehicle was part of the message.

Additionally, Lieutenant Lindsay, Detective Merkle, and Deputy Quinn all testified that they had personally conducted numerous[3] traffic stops based on the EIV=N message, and that when the vehicles were pulled over based on that message, the vehicles "[h]ardly ever" had insurance. Specifically, Detective Merkle estimated that well under 10% of the vehicles he pulled over based on the EIV-N message ended up having insurance, while Deputy Quinn estimated only about 5% had insurance. In other words, based on the officers' experience, the LEIN information was at least 90% accurate.

At the conclusion of the motion hearing, the prosecution argued that Lieutenant Lindsay had reasonable suspicion to pull over the vehicle on June 22, 2017, because the reasonable suspicion standard was "very low" and the "reporting [of insurance is] right the vast majority of the time." The prosecution also asserted that the Secretary of State's provisioning of this information to the LEIN did not violate the confidentiality requirement in MCL 257.227(4), because the Secretary of State was not providing information submitted by the insurer, but was instead providing "a simple message" as to whether insurance exists. Additionally, the prosecution argued that where there is a statutory violation, the exclusionary rule is generally not implicated.

Defendant argued that because the insurance information is only reported to the Secretary of State twice a month, the information on the LEIN was not reasonably accurate or timely, and therefore, could not form the basis for reasonable suspicion. Defendant also reiterated his argument that the provision of this information by the Secretary of State violated the confidentiality requirement in MCL 257.227(4) and MCL 500.3101a(3), and that the information on the LEIN had to be linked to an individual in order to tie it to a vehicle.

The trial court granted the motion to suppress in Case No. 17-244015-FH, concluding that the LEIN information did not provide police with reasonable suspicion to stop the vehicle and, thus, they unlawfully obtained the cell phone pictures. In rendering its decision, the trial court expressed concern that the information provided by the Secretary of State to the LEIN was only updated twice a month. Moreover, the trial court did not believe the purpose of the law was

---

[3] Detective Merkle testified that he had pulled over approximately 100 vehicles based on the LEIN indication that the vehicle had no insurance, while Deputy Quinn ran approximately 20 plates a day through the LEIN.

to provide the information to law enforcement and so the statute was violated by its use within the LEIN system. Ultimately, the trial court entered an order granting defendant's motion to suppress because "the stop of [d]efendant[] [Sanders's] vehicle was unlawful, and any evidence obtained as a result of the stop is suppressed as to both" files "for the reasons stated on the record."

The prosecution filed a motion for reconsideration, and attached three new affidavits to its motion. The prosecution argued that the EIV=N message does not reveal any confidential information and, "even if there was a statutory violation, the exclusionary rule would not be the correct remedy in this circumstance." Moreover, the prosecution argued that there was reasonable suspicion to stop the vehicle in light of the testimony from Lieutenant Lindsay, Detective Merkle, and Deputy Quinn that the EIV=N message is virtually always accurate, and the trial court "was mistaken as to the nature of the violation being investigated by the traffic stop."

The trial court denied the prosecution's motion for reconsideration, concluding that the "plain language of [MCL 257.227] does not provide for law enforcement's use of the EIV information."[4] The trial court remained concerned about the reporting frequency and, because of its concern with the reliability of the EIV information and its conclusion that the statute was violated, the trial court concluded that the officers could not form reasonable suspicion that a crime was committed. Finally, the trial court concluded that the exclusionary rule was the proper remedy and no exception to the rule applied, and reaffirmed its decision to suppress the evidence.

## II. ANALYSIS

"When reviewing a decision on a motion to suppress, we review a trial court's factual findings for clear error." *People v Mathews*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 339079); slip op at 3, citing *People v Tanner*, 496 Mich 199, 206; 853 NW2d 653 (2014). " '[T]hose findings will be affirmed unless we are left with a definite and firm conviction that a mistake was made.' " *People v Simmons*, 316 Mich App 322, 325; 894 NW2d 86 (2016), quoting *People v Davis*, 250 Mich App 357, 362; 649 NW2d 94 (2002) (quotation marks omitted). "We review de novo a trial court's ultimate decision on a motion to suppress." *Mathews*, ___ Mich App at ___; slip op at 3 (quotation marks and citation omitted). "Questions of statutory interpretation are subject to de novo review." *People v Arnold*, ___ Mich ___, ___; ___ NW2d ___ (2018) (Docket No. 154764); slip op at 4.

As detailed in Section I of this opinion, the trial court articulated two reasons for granting the motion to suppress: (1) the Secretary of State's providing of insurance information to the LEIN system is not up-to-date, i.e., it is only provided twice a month, so police lacked reasonable suspicion to pull the vehicle over, and (2) the statute did not allow the Secretary of State to provide the information to the LEIN system. We address each separately.

---

[4] It also concluded that supplying a VIN to the LEIN was also contrary to the statute.

## A. STATUTORY VIOLATION

One of defendant's two arguments in support of the trial court's ruling is that the Secretary of State's provision of insurance information to police violated the confidentiality requirements of MCL 257.227(4) and MCL 500.3101a(3). However, we need not decide the merits of this provision, for even if we assume that the Secretary of State violated MCL 257.227(4) and MCL 500.3101a(3), those statutes provide no remedy for a violation of the confidentiality requirements, the Secretary of State is not a party to this action, and application of the exclusionary rule was improper based on this perceived statutory violation.

"The exclusionary rule is a judicially created remedy that originated as a means to protect the Fourth Amendment right of citizens to be free from unreasonable searches and seizures." *People v Hawkins*, 468 Mich 488, 498; 668 NW2d 602 (2003). "[T]he aim of the [exclusionary] rule is one of police deterrence," rather than curing the invasion of an individual's right to be free from an unconstitutional search or seizure. *Id*. at 499.

> Irrespective of the application of the exclusionary rule in the context of a *constitutional* violation, the drastic remedy of exclusion of evidence does not necessarily apply to a *statutory* violation. Whether the exclusionary rule should be applied to evidence seized in violation of a statute is purely a matter of legislative intent. [*Id*. at 500.]

"[W]here there is no determination that a statutory violation constitutes an error of constitutional dimensions, application of the exclusionary rule is inappropriate unless the plain language of the statute indicates a legislative intent that the rule be applied." *Id*. at 507. Further, "where the objective of the rule—to sanction police misconduct as a means of deterrence—would not be served," the court should permit the proponent to introduce the evidence at trial. *Id*. at 510-512. See also *People v Hamilton*, 465 Mich 526, 534-535; 638 NW2d 92 (2002); *People v Sobczak-Obetts*, 463 Mich 687, 712; 625 NW2d 764 (2001); *People v Stevens (After Remand)*, 460 Mich 626, 631; 597 NW2d 53 (1999). Hence, when addressing the appropriate remedy for a *statutory* violation, the exclusion of evidence is not the go-to, or default, remedy. Instead, the drastic remedy of excluding evidence can only come into play if the legislative intent, gleaned from the words of the statute, permits its use. *Hawkins*, 468 Mich at 500.

Nothing within MCL 257.227 and MCL 500.3101a indicates a legislative intent that the drastic remedy of the exclusion of evidence should be applied for violations of these statutes. Neither statute indicates that, should the confidential information be shared in a manner other than specifically permitted, the exclusionary rule is applicable. Moreover, the purpose of the exclusionary rule, "to sanction police misconduct as a means of deterrence," would not be served because it was the Secretary of State that committed any violation of the statute, not the law enforcement officers who pulled over the vehicle. *Hawkins*, 468 Mich at 510-512. Relatedly, the purpose of the statute is not to deter police conduct, but to ensure confidentiality of certain information. And finally, as detailed in section II B below, there are no constitutional concerns with the officers utilizing this information to establish reasonable suspicion. Thus, even if the provision of the insurance information to the LEIN system was in violation of the statutes, the trial court erred in invoking the exclusionary rule to exclude evidence obtained from the vehicle. *Id*.

## B. RELIABILITY OF INFORMATION

This takes us to the other principal basis[5] for suppression, that being the trial court's conclusion that the twice-a-month updating of the insurance information was not frequent enough to provide officers with reasonable suspicion that a motor vehicle code violation existed.

We must first determine whether defendant was subjected to seizure. Because officers stopped the vehicle defendant was riding in, he was seized. *Simmons*, 316 Mich App at 326 ("Under the Fourth Amendment, stopping a vehicle and detaining the occupants amounts to a seizure."). Because defendant was seized when the vehicle was pulled over, and the vehicle was then searched by police, the question becomes – as it frequently does in Fourth Amendment cases – whether the seizure was reasonable.

The reasonableness of the seizure is the pivotal question because the United States and Michigan Constitutions do not protect individuals from all searches and seizures, but only from *unreasonable* searches and seizures. US Const, Am IV; Const 1963, art 1, § 11; *People v Henry (After Remand)*, 305 Mich App 127, 137; 854 NW2d 114 (2014). Or, as it is frequently stated, "the ultimate touchstone of the Fourth Amendment is 'reasonableness.' " *Riley v California*, 573 US ___, ___; 134 S Ct 2473, 2482; 189 L Ed 2d 430 (2014) (quotation marks and citation omitted). "In determining reasonableness, the court must consider whether the facts known to the officer at the time of the stop would warrant an officer of reasonable precaution to suspect criminal activity." *People v Steele*, 292 Mich App 308, 314; 806 NW2d 753 (2011).

"A traffic stop is justified if the officer has 'an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law.' " *Simmons*, 316 Mich App at 326, quoting *People v Williams*, 236 Mich App 610, 612; 601 NW2d 138 (1999). "This includes a violation of a traffic law." *Simmons*, 316 Mich App at 326, citing *Davis*, 250 Mich App at 363. "Whether an officer has a reasonable suspicion to make such an investigatory stop is determined case by case, on the basis of an analysis of the totality of the facts and circumstances." *People v Kavanaugh*, 320 Mich App 293, 301; 907 NW2d 845 (2017) (quotation marks and citation omitted). "An officer's conclusion must be drawn from reasonable inferences based on the facts in light of his training and experience." *Steele*, 292 Mich App at 315.

In *People v LoCicero (After Remand)*, 453 Mich 496, 501-502; 556 NW2d 498 (1996), the Supreme Court stated:

> The brief detention of a person following an investigatory stop is considered a reasonable seizure if the officer has a "reasonably articulable suspicion" that the person is engaging in criminal activity. The reasonableness of

---

[5] Defendant also argues that a 2003 Michigan State Police internal memo instructing state troopers not to use this insurance information as a basis to pull over a vehicle supports the trial court's decision. But we do not see how a separate police entity's policy impacts our application of the Fourth Amendment to the use of this information by the Monroe officers.

an officer's suspicion is determined case by case on the basis of the totality of all the facts and circumstances. [Citations omitted.]

Moreover, in *People v Freeman*, 240 Mich App 235, 236-237; 612 NW2d 824 (2000), we upheld the officer's reliance upon LEIN information in finding reasonable cause to arrest an individual subject to a personal protection order listed on the LEIN.

MCL 500.3102 provides, in relevant part:

(2) An owner or registrant of a motor vehicle or motorcycle with respect to which security is required, who operates the motor vehicle or motorcycle or permits it to be operated upon a public highway in this state, without having in full force and effect security complying with this section or section 3101 or 3103 is guilty of a misdemeanor. A person who operates a motor vehicle or motorcycle upon a public highway in this state with the knowledge that the owner or registrant does not have security in full force and effect is guilty of a misdemeanor. A person convicted of a misdemeanor under this section shall be fined not less than $200.00 nor more than $500.00, imprisoned for not more than 1 year, or both.

The trial court erred in concluding that the June 22, 2017 traffic stop was not supported by reasonable suspicion. Even accepting the trial court's finding that the insurance information is updated only twice a month, and therefore at worst could be some 16 days old, that delayed reporting time frame does not in any way cause an officer's reliance on the information in making a stop to be unconstitutionally unreasonable. There are at least two reasons for this conclusion.

First, although defendant has provided no caselaw to suggest the "staleness" of this information precludes its use in establishing reasonable suspicion, there are persuasive decisions from our sister states and the federal judiciary that uniformly conclude that vehicle-related information older than two weeks is a proper basis to establish reasonable suspicion to pull over a vehicle. See, for example, *United States v Broca-Martinez*, 855 F3d 675, 680 (CA 5, 2017) ("A state computer database indication of insurance status may establish reasonable suspicion when the officer is familiar with the database and the system itself is reliable. If that is the case, a seemingly inconclusive report such as 'unconfirmed' will be a specific and articulable fact that supports a traffic stop."); *United States v Sandridge*, 385 F3d 1032, 1036 (CA 6, 2004) (holding that information about the status of a driver's license that was three weeks old was sufficiently current to provide reasonable suspicion regarding driving with a suspended license); *United States v Pierre*, 484 F3d 75, 84 (CA 1, 2007) (concluding that five-month-old information about a suspended license provided officer with reasonable suspicion that the driver was still driving with a suspended license); *Tucker v State*, 174 So 3d 485, 487 (Fla App, 2015) (holding that a 40-day-old vehicle description provided reasonable suspicion to pull it over); *Commonwealth v Farnan*, 55 A3d 113, 117-118; 2012 PA Super 221 (2012) (stating that license status information 30 days old was not stale, and provided reasonable suspicion for officer to pull over a vehicle); *State v Spillner*, 116 Hawaii 351, 363; 173 P3d 498 (2007) (holding that one week old insurance information, and two-week-old license information, was not stale and provided reasonable suspicion to validly pull over the vehicle); *State v Duesterhoeft*, 311 NW2d 866, 867 (Minn,

1981) (concluding that 30-day-old knowledge that driver was unlicensed was not stale, and provided reasonable suspicion to pull over the vehicle).

A good explanation of the principles relied upon in these and other decisions is found in *United States v Cortez-Galaviz*, 495 F3d 1203, 1209 (CA 10, 2007), where now Justice Gorsuch wrote for the court that insurance information 20 days old was not stale and provided the officer with reasonable suspicion to pull over the vehicle:

> Finally, Mr. Cortez–Galaviz complains that, whatever else one might say about the information on which Officer Rapela relied, the "no information found" alert issued by Insure–Rite in this case was 20 days old, dated September 30, 2005. In assessing this argument, we note at the outset that timeliness of information is but one of many factors in the mix when assessing whether reasonable suspicion for an investigatory detention exists, and the relative importance of timeliness in that mix depends on the nature of the criminal activity at issue. Thus, for example, when the legal infraction at issue typically wears on for days or weeks or months (like, say, driving without a license or appropriate emissions and safety certifications), rather than concludes quickly (like, say, jaywalking or mugging), the timeliness of the information on which the government relies to effect an investigative detention "recedes in importance" compared to other factors, such as the type and duration of offense at issue.
>
> Here, Officer Rapela's stop was aimed at investigating a possible violation of Utah's vehicle insurance laws, an offense that neither party argues is transitory in nature. He indisputably relied on the most current information available to a patrolling officer. And Mr. Cortez–Galaviz offers us no other evidence or argument to suggest that reliance on a 20 day old alert is in any way or wise unreasonable given the nature of available technology, the offense or detention at issue, or the practical challenges associated with coordinating the dissemination of registration and insurance information for every motor vehicle on the road. Under these circumstances and on this record, therefore, we agree with the district court that a delay of 20 days between an alert and an officer's inquiry does not, by and of itself, nullify a traffic stop on the basis of a "not found" insurance report. [Citations omitted.]

Several important principles are contained in these decisions that bear on our decision. For one, because driving without insurance is an "on-going" infraction, there is less of a concern for "staleness" than there would be for a crime that has already occurred. See *Cortez-Galaviz*, 495 F3d at 1209; *Tucker*, 174 So 3d at 487. If a driver did not have insurance for his vehicle just over two weeks earlier, it is likely he does not currently have it. Though there can be no certainty in that premise, there does not need to be. This takes us to the second principle. To justify a stop for Fourth Amendment purposes, police must only have a reasonable *suspicion*, not probable cause or some other heightened burden, that a traffic violation has or is occurring. *Duesterhoeft*, 311 NW2d at 868. All that is required is that officers "have more than a 'mere hunch' that the person stopped is engaged in illegal activity, [because] 'reasonable suspicion need not rise to the level of probable cause.' Indeed, it requires only 'some minimal level of objective justification for making the stop.' " *Broca-Martinez*, 855 F3d at 678 (quotation marks and citations omitted).

Here, the at most 16-day lapse in up-to-date information made available through the LEIN was not so late or unreliable that it could not provide the officers with reasonable suspicion that the vehicle was uninsured. The officers' unrefuted testimony was that the insurance information was extraordinarily *accurate,* and even without that testimony, nothing in the record suggests that the information was not sufficiently reliable to provide reasonable suspicion that the driver was operating the vehicle contrary to MCL 500.3101. This is particularly so given that the insurance information was received from the entity required by law to maintain it, and even if the insurance information was two weeks old, given the continuing nature of the violation, it was enough to provide officers with a minimal level of objective justification for a stop. Consequently, in light of the LEIN information and Lieutenant Lindsey's knowledge, experience, and training, we hold that Lieutenant Lindsey had at least a reasonable suspicion that the motorist was operating his vehicle without insurance and, therefore, the stop and detention to check for valid insurance was reasonable under the Fourth Amendment. See *State v Leyva*, 599 So 2d 691, 693 (Fla App, 1992).

The trial court's order suppressing the evidence is reversed, and this matter is remanded for further proceedings. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Stephen L. Borrello
/s/ Amy Ronayne Krause