*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

KING EDWARD LONG,

Defendant-Appellee.

UNPUBLISHED
February 25, 2020

No. 344594
Wayne Circuit Court
LC No. 18-001605-01-FH

Before: SHAPIRO, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

The prosecution appeals from the trial court's order dismissing the single charge against defendant of assault with a deadly weapon, MCL 750.82. For the reasons stated in this opinion, we reverse.

This appeal stems from an alleged incident at an apartment building in Detroit shortly after midnight on February 4, 2018. Defendant, a former resident, arrived at the building and attempted to contact one of the current residents using the intercom located in the building's vestibule. A set of locked doors separated the vestibule from the building's lobby. After defendant's unsuccessful attempt to contact the resident, defendant asked the security guard on duty, Dale Underwood, to let him into the building. Underwood informed defendant that he could not enter the building because defendant had been banned by the building's management. Despite Underwood informing him that he could not come in, defendant entered the lobby when one of the building's residents exited through the locked doors. Underwood approached defendant and again told him that he was banned from the building and that he would have to leave. According to Underwood, after a short verbal exchange, defendant drew a knife from his pants and chased Underwood through the lobby and down the building's main hallway. Underwood reported that as he did so, defendant shouted profanities and threats at him.

Underwood exited through the building's emergency door. He returned to the building's main entrance and called the police. Underwood returned to the building's security office and reviewed the live feed provided by the building's security cameras, finding defendant on the building's fifth floor. Two Detroit police officers—Officer Kyle Herman and Officer Trevor

-1-

Gornicz—arrived at the building and, after being informed by Underwood of defendant's location, took the elevator to the building's fifth floor. The officers located defendant and noticed a knife handle protruding from the waistband of defendant's pants. Officer Herman ordered defendant to place his hands on his head. Defendant cooperated and Officer Herman removed the knife from defendant's possession and the officers arrested defendant.

During defendant's jury trial, the prosecution called Underwood to testify. Relevant to this appeal, he testified that his security guard uniform consists of pants and a dark polo shirt with red patches on both arms. As defendant's trial counsel cross-examined Underwood, the officer-in-charge of the case informed the prosecutor of the existence of video footage from Officer Gornicz's body camera of the alleged incident. After defendant's counsel had completed his cross-examination of Underwood, the prosecutor informed the trial court and defendant's counsel that he had come into possession of the video footage. The trial court, along with the parties, decided that the prosecution could continue with its case-in-chief and that the parties would view the video footage when the court recessed for lunch. After the parties concluded the questioning of Officer Herman, the trial recessed.

When the proceedings reconvened, the trial court discussed the ramifications of the newly discovered video footage. The prosecutor recounted, for the record, how he came to possess the video footage. According to the prosecutor, the only inconsistency between the Underwood's testimony and the video footage was that the footage showed Underwood wearing a blue hooded sweatshirt over or instead of his usual security guard uniform. The prosecutor stated that he had no intention of introducing the video footage into evidence but offered to do so as a possible remedy for the failure to disclose the video footage during discovery. The prosecutor also suggested a continuance so that Underwood could be recalled and presented with this impeachment evidence as another suitable remedy. In response, defendant's counsel argued that had he been aware of the video footage, his cross-examination of Underwood and the whole theory of defendant's case would have been "substantially different." Defendant requested the trial court dismiss the case because of the prosecution's discovery violation. The prosecution briefly replied that, because defendant had not requested the video footage, it had not committed a discovery violation by failing to disclose the evidence of the video footage.

The trial court disagreed with the prosecution's arguments and dismissed the charge against defendant. In explaining its reasons for dismissing the case, the trial court stated that the video footage contained significant impeachment evidence and the prosecution's failure to discover and disclose the footage was an egregious discovery violation that prejudiced defendant's right to a fair trial. The trial court also stated that postponing the case to recall Underwood was not a practical solution to the violation given the court's upcoming docket. Finally, the trial court stated that there needed to be some consequence for the prosecution's inexcusable oversight and the interests of justice required the case to be dismissed. The prosecution objected to the trial court's decision and this appeal ensued.

The prosecution argues that the trial court abused its discretion by dismissing the charge against defendant when a less severe remedy that would have cured any prejudice to defendant existed. We agree.[1]

MCR 6.201(A) conditions mandatory discovery disclosures in criminal cases on a request by the opposing party. The prosecution argues that there was not a discovery violation because the defense never requested the body camera footage. Arguably, a specific request for the body camera video was not necessary as a request for the discovery provided for in MCR 6.201 would have encompassed the video. See MCR 6.201(A)(2). However, we need not decide this issue. In the lower court proceedings, the prosecution and the defense seemingly agreed that a discovery violation had occurred and they only disputed what the remedy was required to allow the defendant a fair trial. Given that, for the purposes of this opinion, we will assume that a discovery violation occurred.

However, we conclude that the ultimate sanction of dismissal was an abuse of discretion under the circumstances. MCR 6.201(J) provides a range of remedies for discovery violations:

> If a party fails to comply with this rule, the court, in its discretion, may order the party to provide the discovery or permit the inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances. Parties are encouraged to bring questions of noncompliance before the court at the earliest opportunity. Willful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court. An order of the court under this section is reviewable only for abuse of discretion.

"When determining the appropriate remedy for discovery violations, the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." *People v Banks*, 249 Mich App 247, 252; 642 NW2d 351 (2002). "A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant, and impairs his ability to get a fair trial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995).

Here, defendant was not substantially prejudiced by the prosecutor's failure to disclose the footage. The footage's only probative value to the defense is that it arguably impeaches

---

[1] We review "a trial court's decision regarding the appropriate remedy for a discovery violation for an abuse of discretion." *People v Dickinson*, 321 Mich App 1, 17; 909 NW2d 24 (2017). "An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of principled outcomes." *People v March*, 499 Mich 389, 397; 886 NW2d 396 (2016) (quotation marks and citation omitted). A trial court's factual findings are reviewed for clear error. *People v Mazzie*, 326 Mich App 279, 288; 926 NW2d 359 (2018). "Interpretation of a court rule is treated like interpretation of a statute, it is a question of law that is reviewed de novo." *People v Phillips*, 468 Mich 583, 587; 663 NW2d 463 (2002). Similarly, questions of constitutional law are reviewed de novo. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012).

Underwood's testimony indicating that he was wearing his security guard uniform at the time of the incident. While this case largely turns on Underwood's credibility, his wardrobe on the night of the offense is a relatively minor matter. Further, while the trial court was understandably concerned with its docket, there were alternative remedies that would not have caused substantial delay. For instance, instead of granting defendant's request for dismissal, the trial court could have required Underwood to return for additional cross-examination. Alternatively, the court could have let the defense show the portion of the video depicting Underwood in a blue sweatshirt, while barring the prosecution from using the footage without putting the witness back on the stand. These, or other measures within the court's discretion, would have sufficiently minimized any prejudice to defendant. Further, the prosecutor's failure to provide the discovery was not willful. The trial court stated that it was not ascribing bad faith to the prosecution's failure to disclose the video footage to defendant and defense counsel stated that he did not believe that the prosecutor's failure to disclose was done in bad faith. Under those circumstances, the trial court abused its discretion by dismissing the charge against defendant pursuant to MCR 6.201(J).

We also conclude that the prosecutor's failure to disclose the body camera video did not violate defendant's due process right to favorable evidence. To establish a *Brady*[2] violation, a defendant must show that "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). "To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *People v Dimambro*, 318 Mich App 204, 219; 897 NW2d 233 (2016) (quotation marks and citation omitted).

As discussed, the body-camera footage is relevant to impeachment on a minor point, i.e., Underwood's testimony regarding what he was wearing the night of the incident. Further, having reviewed Underwood's testimony, we note that he testified only to what his security uniform was, not that he was wearing it that night or that he was not wearing any other article of clothing. Similarly, the video footage shows Underwood interacting with the police officers *after* the alleged assault, so it is not necessarily representative of what he was wearing earlier. Accordingly, the footage is not material for purposes of *Brady* and the trial court clearly erred to the extent that it found otherwise. In sum, the prosecution did not violate defendant's right to due process by failing to discover and disclose the video footage before trial.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Kathleen Jansen
/s/ Michael J. Kelly

---

[2] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).