*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant/Cross-Appellee,

v

RICKY MEEKS,

      Defendant-Appellee/Cross-Appellant.

UNPUBLISHED
October 15, 2025
12:06 PM

No. 373409
Muskegon Circuit Court
LC No. 2024-002003-FH

Before: RICK, P.J., and MALDONADO and KOROBKIN, JJ.

PER CURIAM.

In this criminal interlocutory appeal, the prosecution appeals by delayed leave granted[1] the trial court's order granting defendant's motion to suppress. We affirm.

## I. FACTUAL BACKGROUND

In March 2021, Officer Jakob Evans of the Muskegon Police Department was on patrol when he observed a car with a worn out, unreadable license plate. Officer Evans recognized the car as belonging to defendant. Officer Evans was aware that a warrant for defendant's arrest had been issued for assault with a dangerous weapon. Officer Evans conducted a traffic stop and arrested defendant on the outstanding warrant.

When Officer Evans took defendant into custody, defendant's car was parked in the northbound lane of a two-way dirt road that had no painted traffic lines. Officer Evans asked defendant for consent to search the car and defendant refused. Defendant asked if his vehicle would be towed, and Officer Evans confirmed that he would be towing the vehicle. Around that time, defendant's girlfriend arrived at the scene. Defendant stated that he wanted his girlfriend to get his money and phone from the car and for her to have the keys to his house, which were in his

---

[1] *People v Meeks*, unpublished order of the Court of Appeals, entered May 19, 2025 (Docket No. 373409).

pocket. Officer Evans told defendant that he would collect those items and give them to defendant's girlfriend.

Officer Evans then conducted what he characterized as an inventory search of the car. Dashcam video of the incident indicated that defendant's girlfriend asked Officer Evans, "What are you searching for?" to which Officer Evans replied: "It's none of your concern. I'm in the middle of an investigation." Officer Evans located numerous lottery tickets, digital scales, a large sum of cash, a loaded pistol, and narcotics inside the car. Field testing determined that the substances were cocaine and methamphetamine. Officer Evans reported what he found in the car over his radio. He additionally said that defendant had been "circling the block around his house" and suggested that the police should "lock [the house] down." Officer Evans thereafter requested and obtained a search warrant for defendant's home. Police searched the home and discovered cocaine and a large sum of money.

The Muskegon County Prosecutor charged defendant with possession with intent to deliver methamphetamine, MCL 333.7401(2)(b)(*i*); possession with intent to deliver cocaine less than 50 grams, MCL 333.7401(2)(a)(*iv*); felon in possession of a firearm, MCL 750.239; and carrying a concealed weapon, MCL 750.227. A federal grand jury indicted defendant on federal criminal charges arising from the same incident, and the state charges were dismissed without prejudice. In federal court, defendant moved to suppress the evidence. At a hearing in federal district court, Officer Evans testified that, at the time of the stop, he was part of the Muskegon Criminal Activity Team (CAT). He stated that the CAT focused on serious offenses involving narcotics, firearms, other weapons charges, and felony warrants. Officer Evans testified that this was "a high intensity patrol" unit and that the officers were encouraged to make traffic stops "and get into vehicles and search for guns and drugs." Ultimately, the federal court suppressed the evidence, and the federal case was dismissed.

The Muskegon County Prosecutor then reauthorized the charges against defendant. Defendant again moved to suppress the evidence found in the search of his vehicle and home. The trial court granted defendant's motion, concluding that Officer Evans failed to comply with the Muskegon Police Department's impoundment policy by failing to give defendant the opportunity to select a wrecker of his choice. The trial court additionally concluded that the inventory search was unconstitutional because it was a pretext for criminal investigation. This appeal followed.

II. ANALYSIS

The prosecution argues that the trial court erred by granting defendant's motion to suppress evidence and finding that the search of defendant's car violated his Fourth Amendment rights. Additionally, the prosecution argues that the evidence discovered during the search of defendant's home should not have been suppressed. We disagree.

This Court reviews de novo a trial court's ruling on a motion to suppress evidence. *People v Mazzie*, 326 Mich App 279, 288-289; 926 NW2d 359 (2018) (quotation marks and citations omitted). This Court also reviews de novo whether a Fourth Amendment violation occurred, as well as whether the exclusionary rule applies to the matter at hand. *People v Mahdi*, 317 Mich App 446, 457; 894 NW2d 732 (2016) (quotation marks and citation omitted). We review the trial court's factual findings for clear error. *Mazzie*, 326 Mich App at 288. "A finding of fact is clearly

erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *Mahdi*, 317 Mich App at 457.

## A. SEARCH OF DEFENDANT'S CAR

The prosecution first contends that Officer Evans conducted a lawful inventory search of the vehicle. "The lawfulness of a search or seizure depends on its reasonableness." *People v Moorman*, 331 Mich App 481, 485; 952 NW2d 597 (2020) (quotation marks and citation omitted). "Searches or seizures conducted without a warrant are per se unreasonable, subject to several well-delineated exceptions." *Id*. An inventory search of a vehicle is one such exception, as it is "part of the caretaking function performed by the police." *People v Toohey*, 438 Mich 265, 275; 475 NW2d 16 (1991). Those caretaking functions are generally "divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id*. at 274 (citation omitted). An inventory search is constitutionally valid if there exists "an established set of procedures which the police must follow in making the determination whether to impound" a vehicle, and the impoundment is "not used as a pretext for conducting a criminal investigation." *Id*. at 285. In other words, "to establish that an inventory search is reasonable, the prosecution must establish that an inventory-search policy existed, all police officers were required to follow the policy, the officers actually complied with the policy, and the search was not conducted in bad faith." *People v Swenor*, 336 Mich App 550, 568; 971 NW2d 33 (2021).

Under MCL 257.252d,

> (1) A police agency or a governmental agency designated by the police agency may provide for the immediate removal of a vehicle from public or private property to a place of safekeeping at the expense of the last titled owner of the vehicle in any of the following circumstances:
>
> * * *
>
> (b) If the vehicle is parked or standing upon the highway in such a manner as to create an immediate public hazard or an obstruction of traffic.

The Muskegon Police Department has a towing and impound policy that officers are required to follow. The policy provides, in pertinent part:

> Whenever the owner or operator of a vehicle is arrested, the arresting officer should provide reasonable safekeeping by leaving the vehicle secured and lawfully parked at the scene or, when appropriate, by having the vehicle towed, such as when the vehicle presents a traffic hazard or the vehicle would be in jeopardy of theft or damage if left at the scene.

> When a member of the Muskegon Police Department takes the driver of the motor vehicle into custody and the vehicle is improperly parked, and the driver or owner refuses to select a wrecker of their choice, the member may impound the vehicle.

Officers are not required to investigate whether alternatives to towing a vehicle exist after an arrest. However, a vehicle should not be towed if reasonable alternatives exist. When considering whether to leave a vehicle at the scene, officers should take into consideration public safety as well as the reasonable safety of the vehicle and its contents.

\* \* \*

The contents of all vehicles impounded at the request of department members shall be inventoried and listed on the inventory report. When reasonably practicable, photographs may be taken to assist in the inventory.

Members should ask the occupants whether the vehicle contains any valuables or hazardous materials. Responses should be noted in the inventory report. If the occupant acknowledges that any closed container contains valuables, the container shall be opened and inventoried. When practicable and appropriate, such items should be removed from the vehicle and given to the owner, or on rare occasions, booked into property for safekeeping.

Grounds existed for Officer Evans to take defendant into custody. The record indicates that his car was parked in a hazardous spot near a two-lane road. However, there is no dispute that Officer Evans failed to give defendant the opportunity to select a wrecker of his choice and immediately impounded the vehicle upon defendant's arrest. He likewise did not consider whether defendant's girlfriend, who was present at the time, could take the car and move it off the road, rather than have the vehicle impounded and towed. Thus, he did not properly follow departmental policy regarding impoundment and proceeded to conduct an inventory search in violation of that policy.

The prosecution contends this was an administrative error that should not render the search unconstitutional. In support of that argument, the prosecution cites *Florida v Wells*, 495 US 1; 110 S Ct 1632; 109 L Ed 2d 1 (1990). In *Wells*, a police trooper impounded the defendant's car after he was pulled over for speeding and taken to the police precinct for a breathalyzer test. *Id*. at 2. The trooper informed the defendant that he was going to impound the car and asked for consent to open the trunk. *Id*. Inside the trunk was a locked suitcase, which the trooper opened. *Id*. The suitcase contained "a garbage bag containing a considerable amount of marijuana." *Id*. The United States Supreme Court was tasked with determining whether the evidence found in the trunk should be suppressed. *Id*. at 3. Relevant to this appeal, the *Wells* Court observed that "[t]he individual police officer must not be allowed so much latitude that inventory searches are turned into 'a purposeful and general means of discovering evidence of crime[.]' " *Wells*, 495 US at 4, quoting *Colorado v Bertine*, 479 US 367, 376; 107 S Ct 738; 93 L Ed 2d 739 (1987). However, the *Wells* Court further reasoned that "there is no reason to insist that [inventory searches] be conducted in a totally mechanical 'all or nothing' fashion." *Wells*, 495 US at 4. Instead, "[a] police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself." *Id*.

The prosecution argues that, under *Wells*, Officer Evans must be given "latitude" to overlook departmental procedure in this matter. The prosecution reasons that Officer Evans's

deviation from procedure was minor and does not render the entire search constitutionally invalid. But this argument asks us to view the failure to follow departmental procedure in total isolation, when in actuality, we must also consider whether the inventory search was conducted in good faith. As the United States Supreme Court has explained, "[n]othing . . . prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Bertine*, 479 US at 375-376. Likewise, our Supreme Court has stated that "[t]he exercise of discretion within prescribed regulations in determining whether to impound an automobile should not, *absent bad faith*, necessarily render unconstitutional the decision to impound." *Toohey*, 438 Mich at 279-280 (emphasis added). Thus, even were we to accept the prosecution's argument that "sufficient compliance" with departmental policy allows for the conclusion that an inventory search was constitutionally valid, and that Officer Evans is entitled to some latitude in terms of his adherence to that policy, it also matters whether the search was conducted in good faith. *Id*.

Here, the circumstances suggest that Officer Evans's inventory search of defendant's car was *not* conducted in good faith and merely served as a pretext for a criminal investigation. *Toohey*, 438 Mich at 271-272; *Swenor*, 336 Mich App at 568. As the trial court noted, in the federal district court case, Officer Evans expressly testified that the CAT encouraged its members to "get into vehicles and search for guns and drugs." The record further indicates that, when defendant refused to consent to a search, Officer Evans elected to bypass the need to obtain consent or a warrant by impounding defendant's car and conducting an inventory search. When asked by defendant's girlfriend what he was looking for in defendant's car, Officer Evans stated that he was "in the middle of an investigation." Officer Evans knew that there was an active warrant for defendant's arrest and stated on the dashcam video that he had been watching defendant for some time before making the stop. Immediately after finding contraband in the car, Officer Evans radioed for other officers to "lock [defendant's house] down," suggesting that he knew or believed there would be evidence of further crimes in the house. Officer Evans additionally testified at defendant's preliminary examination that he knew defendant and had pulled him over "a couple of times for tints, and a few other various things" in the past. Considering the foregoing, it is clear that the impoundment and purported inventory search were but a pretext for the criminal investigation of an individual suspected of drug trafficking and other criminal activity. Accordingly, the trial court properly suppressed the evidence discovered in the inventory search.

The prosecution alternatively argues that the evidence discovered in the car should be admitted under the automobile exception to the warrant requirement or the good-faith exception to the exclusionary rule. Generally, "a search for purposes of the Fourth Amendment occurs when the government intrudes on an individual's reasonable, or justifiable, expectation of privacy." *People v Antwine*, 293 Mich App 192, 195; 809 NW2d 439 (2011) (quotation marks and citation omitted). "Searches or seizures conducted without a warrant are per se unreasonable, subject to several well-delineated exceptions." *People v Moorman*, 331 Mich App 481, 485; 952 NW2d 597 (2020). One such exception is the automobile exception, which provides that, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." *Pennsylvania v Labron*, 518 US 938, 940; 116 S Ct 2485; 135 L Ed 2d 1031 (1996). "It is the government's burden to prove that an exception to the warrant requirement exists." *People v Armstrong*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 165233); slip op at 6.

Before conducting the inventory search, Officer Evans observed several lottery tickets in defendant's car. He stated that, in his training and experience, lottery tickets were often used as packaging for narcotics, but admitted that the tickets in defendant's car were not folded or creased as a means of packaging. Therefore, the lottery tickets were not sufficient to establish probable cause. Further, Officer Evans admitted that "the search was done because the vehicle was being impounded" and agreed that he did not have probable cause when he started his search. Notably, under the inventory search exception to the warrant requirement, officers do not need to have probable cause to conduct a search. *Toohey*, 438 Mich at 274-275. The same is not true of searches pursuant to the automobile exception to the warrant requirement, see *Labron*, 518 US at 940. Officer Evans's testimony contradicts the contention that the search in this matter was conducted pursuant to the automobile exception to the warrant requirement. The remainder of the prosecution's argument is that, when conducting the inventory search, Officer Evans observed evidence of criminal activity that then gave him probable cause to search under the automobile exception. However, anything observed during the unlawful inventory search could not establish probable cause to justify the search from the outset.

"Under the good-faith exception [to the exclusionary rule], evidence obtained through a defective search warrant is admissible when the executing officer relied upon the validity of the warrant in objective good faith." *People v DeRousse*, 341 Mich App 447, 465; 991 NW2d 596 (2022). The primary purpose of the exclusionary rule is to deter "official misconduct by removing incentives to engage in unreasonable searches and seizures." *People v Goldston*, 470 Mich 523, 529; 682 NW2d 479 (2004). The sum of the prosecution's argument is that Officer Evans did not engage in police misconduct by impounding and conducting an inventory search of defendant's car. However, the record states that Officer Evans stopped defendant in the past, followed defendant for some time before initiating the traffic stop in this matter, and conducted an inventory search of the car only after defendant refused to consent to a search. All of these actions suggest that the inventory search was a pretext for a criminal investigation. Officer Evans additionally stated that CAT officers were "encouraged to write tickets and get into vehicles and search for guns and drugs," with no apparent regard for Fourth Amendment principles. The record therefore does not support the argument that Officer Evans acted in good faith in this matter. Reversal is not required.

B. SEARCH OF DEFENDANT'S HOME

The prosecution next argues that the trial court erred by finding that the search of defendant's home was derivative of the illegal search of defendant's vehicle and, therefore, also needed to be suppressed. We disagree.

"The exclusionary rule . . . reaches not only primary evidence that is obtained as a direct result of an illegal search or seizure, but also evidence that is discovered later and found to be derivative of the illegality, i.e., fruit of the poisonous tree." *People v Hammerlund*, 337 Mich App 598, 607-608; 977 NW2d 148 (2021). Given that the search of defendant's vehicle was unlawful, the subsequent search of defendant's home, relying only on evidence from the vehicle to establish probable cause, was also unlawful. The trial court therefore did not err by suppressing the evidence.

### III.  DEFENDANT'S CROSS-APPEAL

On cross-appeal, defendant argues that the traffic stop and impoundment of his car were unconstitutional for several other reasons.  The trial court considered those reasons, but found they lacked merit.  Because we find that the trial court properly suppressed the evidence, we need not address defendant's arguments on cross-appeal.

Affirmed.

/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado
/s/ Daniel S. Korobkin