*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LONDAE CAMECK COPELAND,

Defendant-Appellant.

UNPUBLISHED
December 05, 2025
10:26 AM

No. 372015
Muskegon Circuit Court
LC No. 2024-000872-FH

Before: FEENEY, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

Defendant, Londae Cameck Copeland, appeals by leave granted[1] the trial court order denying his motion to quash the search warrant and suppress the resulting evidence seized from his house. For the reasons set in this opinion, we affirm.

## I. BACKGROUND

This case arises out of a search of defendant's residence pursuant to a search warrant that resulted in the seizure of narcotics. Officer Jakob Evans was assigned to the West Michigan Enforcement Team (WEMET) in September 2023. As part of his assignment to WEMET, Officer Evans conducted a narcotic-trafficking investigation involving two brothers.

In early September 2023, the department received an anonymous e-mail tip regarding narcotics transactions, asserting that narcotics transactions were "frequently" occurring at two separate addresses and identified a Black man in his 30s named "Dre" as "the man" that police were "looking for." The tip stated that the man drove a "black [o]r white [sport utility vehicle] as well as a white muscle car." Through surveillance and investigation, Officer Evans corroborated that the brothers each lived at one of the two addresses stated in the tip and that the brothers drove the types of vehicles described. The tip did not refer to defendant, his address, or any address near

---

[1] *People v Copeland*, unpublished order of the Court of Appeals, entered February 19, 2025 (Docket No. 372015).

-1-

his residence. Through surveillance, however, Officer Evans confirmed that defendant's vehicles were at these residences, that defendant himself was at the residences "numerous times on numerous occasions," and that defendant was often in the brothers' vehicles.

In late September 2023, officers executed a search warrant at each of the brothers' residences, resulting in the seizure of their cell phones and drugs. After a search of the cell phone data, law enforcement discovered "multiple communications" of narcotics transactions between the brothers and defendant. Officer Evans knew of defendant because he was "a focal point of investigation for about 10 to 15 years," and the department had received multiple tips about him during that time.

Several days later, Officer Evans obtained a search warrant for defendant's residence after the trial court found probable cause to search on the basis of information provided in the supporting affidavit. Law enforcement executed the warrant the next day, which resulted in the seizure of several narcotics. Defendant was charged with one count of possession with intent to deliver methamphetamine, MCL 333.7401(2)(b)(*i*), as a second or subsequent offense habitual drug offender, MCL 333.7413(1); one count of possession with intent to deliver 50 grams or more but less than 450 grams of a mixture containing cocaine, MCL 333.7401(2)(a)(*iii*), as a second or subsequent offense habitual drug offender, MCL 333.7413(1); one count of possession with intent to deliver less than 50 grams of a mixture containing fentanyl and/or heroin, MCL 333.7401(2)(a)(*iv*), as a second or subsequent offense habitual drug offender, MCL 333.7413(1); and as a fourth-offense habitual offender, MCL 769.12. He moved to quash the search warrant, suppress the resulting evidence, and hold a *Franks*[2] hearing, all of which the trial court denied. Defendant now appeals.

## II. STANDARD OF REVIEW

We review de novo the trial court's ultimate decision on a motion to suppress. *People v Mazzie*, 326 Mich App 279, 289; 926 NW2d 359 (2018). When reviewing a trial court's decision on a motion to suppress, we review a trial court's factual findings for clear error. *Id*. at 288. "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Mahdi*, 317 Mich App 446, 457; 894 NW2d 732 (2016) (quotation marks and citation omitted). We also review de novo the issue "whether the Fourth Amendment was violated and the issue whether an exclusionary rule applies." *People v Corr*, 287 Mich App 499, 506; 788 NW2d 860 (2010) (quotation marks and citations omitted). "A trial court's decision regarding a motion to quash an information is reviewed for an abuse of discretion." *People v Zitka*, 325 Mich App 38, 43; 922 NW2d 696 (2018). Also, "[a] trial court's decision to hold an evidentiary hearing is generally reviewed for an abuse of discretion." *People v Danto*, 294 Mich App 596, 613; 822 NW2d 600 (2011). "An abuse of discretion occurs when a decision falls outside the range of reasonable and principled outcomes, and [a] trial court necessarily abuses its discretion when it makes an error of law." *Zitka*, 325 Mich App at 43-44 (quotation marks and citations omitted; alteration in original). "The facts supporting the grant or denial of an evidentiary hearing are reviewed for clear error,

---

[2] *Franks v Delaware*, 438 US 154; 98 S Ct 2674; 57 L Ed 2d 667 (1978).

and the application of the law to those facts is reviewed de novo." *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (quotation marks and citation omitted).

### III. PROBABLE CAUSE

The Fourth Amendment and its counterpart in the Michigan Constitution guarantee the right of persons to be free from unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. "Absent a compelling reason, Michigan courts must construe Const 1963, art 1, § 11 to provide the same protection as that secured by the Fourth Amendment." *People v DeRousse*, 341 Mich App 447, 454; 991 NW2d 596 (2022) (quotation marks and citation omitted).

"[T]he general rule is that officers must obtain a warrant for a search to be reasonable under the Fourth Amendment." *People v Hughes*, 506 Mich 512, 525; 958 NW2d 98 (2020). "A magistrate shall only issue a search warrant when he or she finds that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *Franklin*, 500 Mich at 101, citing *Illinois v Gates*, 462 US 213, 238; 103 S Ct 2317; 76 L Ed 2d 527 (1983). "A search warrant is sufficiently particular if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the people and property subject to the warrant." *People v Brcic*, 342 Mich App 271, 278; 994 NW2d 812 (2022) (quotation marks and citation omitted). "A search warrant thus must state with particularity not only the items to be searched and seized, but also the alleged criminal activity justifying the warrant." *Hughes*, 506 Mich at 538. "[S]ome context must be supplied by the affidavit and warrant that connects the particularized descriptions of the venue to be searched and the objects to be seized with the criminal behavior that is suspected, for even particularized descriptions will not always speak for themselves in evidencing criminality." *Id.* "A magistrate's finding of probable cause and his or her decision to issue a search warrant should be given great deference and only disturbed in limited circumstances." *Franklin*, 500 Mich at 101.

Specific to warrants for drug trafficking, "an affiant's representations in a search-warrant affidavit that are based upon the affiant's experience can be considered along with all the other facts and circumstances presented to the examining magistrate in determining probable cause." *People v Darwich*, 226 Mich App 635, 639; 575 NW2d 44 (1997). The question at issue is "whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause." *People v Mullen*, 282 Mich App 14, 21; 762 NW2d 170 (2008) (quotation marks and citation omitted).[3]

In the present case, law enforcement discovered drugs and drug-trafficking paraphernalia at the brothers' residences, defendant and the brothers and their respective vehicles were

---

[3] Defendant frames the issue through the application of a "nexus requirement," as articulated by the United States Court of Appeals for the Sixth Circuit, which essentially requires a search-warrant affidavit to "demonstrate a nexus between the evidence sought and the place to be searched." *United States v Brown*, 828 F3d 375, 382 (CA 6, 2016). However, federal caselaw is not binding on us, see *People v Gillam*, 479 Mich 253, 261; 734 NW2d 585 (2007), and we have not explicitly adopted the nexus framework employed by the federal appellate courts.

"consistently" seen at each other's residences and they were seen in each other's vehicles; text messages existed between one of the brothers and defendant that discussed "drug amounts, meeting locations and 'catching plays,' which [was] a common street term for making drug transactions," according to Officer Evans; and defendant was investigated for his involvement in drug trafficking in the area for 10 to 15 years.[4] However, as defendant points out, Officer Evans testified that the three men were "very good friends," which could explain why they were often at each other's residences and in each other's vehicles; Officer Evans testified that he never witnessed any drug activity at defendant's residence; the only mention of defendant's drug history in the record was that WEMET detectives "received information" that two traffic stops occurred involving narcotics within the previous six months; none of the 11 investigations involving defendant and WEMET since 2015 involved defendant's residence; and the anonymous tip e-mail did not mention defendant, his residence, or an address near his home.

Based in part on these factors, defendant contends that the affidavit lacks factual representations regarding his recent involvement in drug-related activities at his residence. This assertion, however, fails to acknowledge the ongoing investigation into the defendant and his co-conspirators for drug trafficking offenses. Police reports indicate that a credible tip had been received, suggesting that drug distribution activities were occurring at the residences linked to Deandre and Damontae Evans, as well as vehicles associated with them. These vehicles were previously linked to controlled purchases conducted by WEMET. Further corroboration of this tip came from physical surveillance conducted by WEMET, which documented interactions among the Evans brothers and defendant at each other's residences and the sharing of vehicles. Notably, on the date the search warrant was executed, physical surveillance confirmed the presence of a vehicle registered to defendant in the driveway of his residence.

On September 26, 2023, law enforcement executed search warrants at two locations affiliated with the Evans brothers. The search yielded significant evidence, including a digital scale with crack cocaine residue, fentanyl pills, a firearm, and additional crack cocaine residue located in a kitchen drawer. Additionally, two cell phones were seized, which revealed that the defendant's cell phone was actively participating in a drug-trafficking conspiracy through messaging with the Evans brothers. Hence, defendant's arguments become problematic when examining that segment of the affidavit that connects him to drug trafficking activities through the analysis of those cell phones confiscated from the residences of his purported co-conspirators:

> WEMET detectives analyzed these cell phones and were able to determine that (phone #) was listed as Deandre Evans as the owner. Also, (phone #) was listed as Damontae Evans as the owner. Located on Deandre Evans' phone were text

---

[4] While Officer Evans testified regarding a length investigation into defendant involving WEMET concerning drug trafficking in other contexts, this history is informative although not determinative of probable cause concerning the search warrant for defendant's residence. Defendant failed to produce conclusive evidence that the pertinent statement was false or made with intent or reckless disregard for the truth, according to the standards articulated in *Franks*, 438 US at 171-172. Consequently, the trial court did not abuse its discretion in denying the defendant's request for a *Franks* hearing regarding these assertions.

messages from "Bro Dae" on phone number (phone #). TLO(TransUnion) shows this cell phone to belong to Londae Copeland. Messages between Deandre Evans and Londae include numerous drug text messages. These messages include both talking about drug amounts, meeting locations and "catching plays" which is a common street term for making drug transactions. Your affiant reviewed the seized phones and messages contained therein. In totality the communications on these phones indicate that the three are participating together in a conspiracy to deliver controlled substances together.

Hence, at the time the search warrant was authorized, police presented the following facts to establish probable cause:

1. Defendant and his co-conspirators were under investigation for drug-trafficking activities.

2. Law enforcement received a tip indicating that drug dealing was occurring at the residences associated with Deandre and Damontae Evans and linked vehicles.

3. The vehicles associated with the Evans brothers were connected to controlled buys conducted by WEMET.

4. WEMET conducted physical surveillance, observing interactions between the Evans brothers and the defendant at each other's homes and sharing vehicles.

5. 5. Surveillance confirmed that a vehicle known to belong to the defendant was present in the driveway of his residence on the date the search warrant was executed.

6. On September 26, 2023, search warrants were executed at two homes connected to the Evans brothers.

7. Inside these homes, law enforcement discovered a digital scale with crack cocaine residue, fentanyl pills, a pistol, and additional crack cocaine residue in a kitchen drawer.

8. Two cell phones were obtained during the search, one of which was linked to defendant and revealed participation in drug-trafficking conspiracy communications with the Evans brothers.

As previously alluded to, "A search warrant may only be issued upon a showing of probable cause. US Const, Am IV; Const 1963, art 1, §11; MCL 780.651(1). Probable cause to issue a search warrant exists if there is a substantial basis for inferring a fair probability that contraband or evidence of a crime exists in the stated place. The affidavit underlying the warrant must be read 'in a common-sense and realistic manner.'" *People v Unger*, 278 Mich App 210, 244-245; 749 NW2d 272 (2008).

In the affidavit, police delineated the connections among the co-conspirators. The affidavit established a link between the defendant and his co-conspirators, whose residence yielded narcotics and drug trafficking paraphernalia. Cell phone records corroborated this relationship,

revealing communications between the Evans brothers and defendant regarding drug transactions. Furthermore, extensive surveillance indicated that the defendant and his co-conspirators shared vehicles, maintained a close friendship, and spent substantial time together. Consequently, when reviewing the affidavit to answer "whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause," *Mullen*, 282 Mich App at 21, in a judicious and pragmatic manner, and deferring to the magistrate's determination as required, we conclude that "a reasonably cautious person could have determined that there was a 'substantial basis' for [a] finding of probable cause" regarding the presence of drugs in defendant's home. *Unger*, 278 Mich App at 245; US Const, Am IV; Const 1963, art 1, §11; MCL 780.651(1).

Affirmed.

/s/ Kathleen A. Feeney
/s/ Stephen L. Borrello
/s/ Anica Letica