*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BOBBY VILLARREAL,

        Defendant-Appellant.

UNPUBLISHED
April 17, 2026
1:57 PM

No. 373353
St. Clair Circuit Court
LC No. 24-001459-FH

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BOBBY VILLARREAL,

        Defendant-Appellant.

No. 373354
St. Clair Circuit Court
LC No. 24-000835-FH

Before: GADOLA, C.J., and MURRAY and M. J. KELLY JJ.

PER CURIAM.

In Docket No. 373353,[1] defendant appeals as of right his jury trial conviction of obstruction of justice, MCL 750.505a. Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to 12 months in jail. In Docket No. 373354, defendant appeals as of right his jury trial convictions of possession of methamphetamine, MCL 333.7403(2)(b)(*i*), and obstruction of justice. Defendant was sentenced as a fourth-offense habitual offender to 3 to 40 years' imprisonment for both counts. We affirm.

---

[1] These appeals were consolidated. *People v Villarreal*, unpublished order of the Court of Appeals, entered December 2, 2024 (Docket Nos. 373353 and 373354).

## I. FACTS AND PROCEDURAL HISTORY

This case arises from two traffic stops conducted by St. Clair County Sheriff Deputies in cooperation with St. Clair County Drug Task Force (DTF) Deputies on a black Chrysler 300 (the vehicle) driven by Bobbie Castro, a female being investigated for suspected narcotics trafficking. In February 2020, DTF Deputy Devin Cleland learned that Castro was obtaining large amounts of methamphetamine. In March 2024, Deputy Cleland set up and observed a controlled buy of narcotics between a confidential informant and Castro, which allowed Deputy Cleland to obtain a search warrant on March 19, 2024, to place a Global Positioning System (GPS) tracker on the vehicle. On March 25, 2024, Deputy Cleland located the vehicle through visual surveillance and requested that St. Clair County Sheriff Deputies conduct a traffic stop on the vehicle, knowing it was uninsured and unregistered, to allow Deputy Cleland to place the GPS tracker on the vehicle. The vehicle was stopped after the Law Enforcement Information Network (LEIN) indicated that it was uninsured and unregistered. Castro, who was driving the vehicle, did not provide a valid driver's license, insurance, or registration, so the vehicle was left in the parking lot where the stop occurred. Defendant, who was in the passenger seat, was released after he provided officers with a false name and date of birth. The GPS tracker was then affixed to the vehicle.

A few days later on March 27, 2024, Deputy Cleland was electronically tracking the vehicle as it headed towards a known location for methamphetamine distribution. The vehicle stayed there for under an hour. The police stopped the car in St. Clair County after LEIN indicated that the vehicle still was uninsured and unregistered. Police removed defendant from the front passenger seat; once again defendant provided officers with a false name. A police canine then conducted an exterior open-air sniff of the vehicle and alerted on the front passenger side door. The canine was certified and trained to detect odors of cocaine, heroin, ecstasy, marijuana, and methamphetamines and their derivatives. A probable cause search then occurred based on the alert. Police discovered a jacket containing 26.1 grams of methamphetamine and defendant's wallet next to where defendant had been seated in the vehicle.

Defendant was charged with two counts of obstruction of justice for providing a false name and date of birth to the officers and charged with delivery/manufacturing of a controlled substance—methamphetamine—in separate felony informations. The trial court granted the prosecutor's motion to consolidate the cases by finding that defendant engaged in similar conduct in both instances, resulting in a series of acts that were part of a single scheme. Defendant moved to suppress from trial the methamphetamine discovered following the canine's alert on the vehicle, arguing that the traffic stop was unlawfully prolonged. The trial court denied defendant's motion and found that the traffic stop was not unreasonably prolonged. The jury found defendant guilty of possession of methamphetamine and guilty on both counts of obstruction of justice. This appeal followed.

## II. DISCUSSION

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his trial counsel was ineffective for failing to renew the motion to suppress the methamphetamine after learning that a GPS tracker was used to locate the vehicle and

that a canine trained to alert to multiple drugs, including marijuana, provided probable cause to search the vehicle. We disagree.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020) (quotation marks and citation omitted). "[T]his Court reviews for clear error the trial court's findings of fact and reviews de novo questions of law." *People v Lane*, 308 Mich App 38, 67-68; 862 NW2d 446 (2014). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Tardy*, 348 Mich App 500, 509; 19 NW3d 164 (2023) (quotation marks and citation omitted). De novo review "means that we review the issues independently, with no required deference to the trial court." *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019). "When the trial court has not conducted a hearing to determine whether a defendant's counsel was ineffective, our review is limited to mistakes apparent from the record." *Lane*, 308 Mich App at 68.

"Criminal defendants are entitled to the assistance of counsel under both the Michigan and United States Constitutions."[2] *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023). The right to counsel requires more than the mere presence of counsel; it requires "the effective assistance of counsel." *Id*. For this Court to order a new trial due to ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). In demonstrating trial counsel's deficient performance, "the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003). The presumption of competent representation "requires a reviewing court to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citation omitted).

Here, defendant incorrectly argues that his trial counsel was ineffective for not filing a renewed motion to suppress the methamphetamine discovered in violation of his Fourth Amendment rights. To prevail on this argument, defendant's renewed motion to suppress must have merit because "[i]neffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion." *Riley*, 468 Mich at 142. We disagree that a motion to suppress would have prevailed for the reasons explained below. Because the motion to suppress was meritless, defendant's trial counsel did not act objectively unreasonably by not filing the motion. Thus, defendant's ineffective assistance of counsel argument fails.

The Michigan and United States Constitutions protect persons from unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. "[T]he United States Supreme Court has long held that the touchstone of the Fourth Amendment is reasonableness." *People v Williams*, 472 Mich 308, 314; 696 NW2d 636 (2005) (quotation marks and citation omitted). "Generally, a

---

[2] Const 1963, art 1, § 20; US Const, Am VI.

search conducted without a warrant is unreasonable unless there exist both probable cause and a circumstance establishing an exception to the warrant requirement." *People v Snider*, 239 Mich App 393, 407; 608 NW2d 502 (2000) (quotation marks and citation omitted). One exception to the warrant requirement is the automobile exception, which "provides that a search without a warrant of an automobile is reasonable if probable cause exists to believe it contains contraband." *People v Clark*, 220 Mich App 240, 242; 559 NW2d 78 (1996). "Probable cause requires a substantial basis for . . . concluding that a search would uncover evidence of wrongdoing." *Snider*, 239 Mich App at 407 (quotation marks, citation, and alteration omitted).

Moreover, "[u]nder the Fourth Amendment, stopping a vehicle and detaining the occupants amounts to a seizure." *People v Mazzie*, 326 Mich App 279, 292; 926 NW2d 359 (2018) (quotation marks and citation omitted). "A traffic stop is justified if the officer has an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law." *Id*. (quotation marks and citation omitted). "This includes a violation of a traffic law." *Id*. (quotation marks and citation omitted).

Here, a renewed motion to suppress the methamphetamine found following the canine sniff lacked merit because the traffic stop was supported by reasonable and articulable suspicion, and probable cause existed, based on the totality of the circumstances, to search the vehicle for narcotics. Therefore, no Fourth Amendment violation occurred. Before conducting the traffic stops on the vehicle, officers verified that the vehicle was uninsured and unregistered by running its license plate through LEIN. Information obtained from LEIN can provide officers with reasonable and articulable suspicion to suspect that a traffic violation has occurred. *Mazzie*, 326 Mich App at 294. Therefore, because driving an unregistered and uninsured vehicle are both traffic offenses, reasonable and articulable suspicion existed to support both traffic stops, which led to defendant being lawfully seized. MCL 500.3102(2); MCL 257.255(1).

After defendant was lawfully seized, the vehicle was lawfully searched following the traffic stop on March 27, 2024, which resulted in methamphetamine being discovered in the vehicle. Specifically, the police canine performed an exterior open-air sniff of the vehicle and alerted on the vehicle's front passenger door. The officers searched the vehicle's interior and discovered methamphetamine and drug paraphernalia in a jacket that had defendant's identification in it, located near where defendant was seated. The officer's search of the vehicle was lawful under the Fourth Amendment because it is well established that canine sniffs of the exterior of a vehicle are reasonable and not considered a search under the Fourth Amendment. *People v Jones*, 279 Mich App 86, 93; 755 NW2d 224 (2008). Moreover, once a canine alerts on a vehicle, probable cause exists to search the vehicle because the alert "is certainly reliable enough to create a fair probability that there is contraband" inside the vehicle. *Clark*, 220 Mich App at 243 (quotation marks and citation omitted). Because the police canine was lawfully present outside of the vehicle when she alerted to the front passenger side of the vehicle, her alert provided probable cause for the officers to search the vehicle for narcotics. This Court does not address whether the traffic stop was needlessly prolonged, because defendant does not contend that the traffic stop was unlawfully extended on appeal.

Additionally, defendant argues that the police canine's alert on the vehicle did not establish probable cause to search the vehicle for narcotics because she was trained to alert for marijuana, a

legal substance. Under the Michigan Regulation and Taxation of Marihuana Act[3] (MRTMA), MCL 333.27951 *et seq*., adults 21 years or older may legally transport 15 grams of marijuana or less in their vehicles. MCL 333.27955. Defendant correctly mentions that, post-MRTMA, the presence of marijuana does not necessarily provide probable cause to search a vehicle for narcotics. For example, in *People v Armstrong*, ___ Mich ___ ; ___ NW3d ___ (2025) (Docket No. 165233), our Supreme Court held that because "marijuana possession and use is generally legal, the odor of marijuana does not on its own supply a substantial basis for inferring a fair probability that contraband or evidence of illegal activity will be found in a particular place." *Id*. at ___; slip op at 12. However, post-MRTMA the smell of marijuana may still be a factor in determining if probable cause exists, under the totality of the circumstances, to conduct a warrantless search of a vehicle. *Armstrong*, ___ Mich at ___; slip op at 13.

In this case, although the police canine was certified and trained to detect and alert in the same manner for odors of cocaine, heroin, ecstasy, marijuana and methamphetamines and their derivatives, her alert on the vehicle provided probable cause for a warrantless search under the totality of the circumstances. In other words, there was probable cause in this particular case because it was not the canine sniff *alone* that led to the search. Specifically, Deputy Cleland witnessed a controlled buy of narcotics between a confidential informant and Castro involving the vehicle. This occurred after Deputy Cleland received information from a "credible and reliable confidential informant" indicating that Castro was procuring large amounts of methamphetamine in the St. Clair County area. These facts support concluding that the vehicle and its driver were transporting and distributing methamphetamine.

Moreover, on the day of the search, Deputy Cleland observed the GPS tracker indicate that the vehicle traveled for an unusually short period of time, to an area known to involve methamphetamine distribution. The vehicle's presence in a known location for methamphetamine distribution, shortly before it was searched, further supports that there was probable cause to search it for narcotics after the police canine alerted on the vehicle. Therefore, based on the totality of the circumstances, probable cause existed to search the vehicle for narcotics, which satisfied the Fourth Amendment and rendered defendant's claim of ineffective assistance of counsel meritless.

In an attempt to avoid this conclusion, defendant argues that a renewed motion to suppress the methamphetamine was warranted because the officers used a GPS tracker to locate the vehicle to conduct the traffic stop. Defendant's argument lacks merit because the GPS was affixed to the vehicle under a judicial warrant. Searches conducted with a warrant are reasonable, and defendant does not challenge the sufficiency of the warrant permitting the GPS surveillance. *People v Hughes*, 506 Mich 512, 525; 958 NW2d 98 (2020). Therefore, the GPS tracker being utilized to locate the vehicle to conduct the traffic stop did not provide a basis to suppress the methamphetamine.

Lastly, defendant incorrectly argues that the search was illegal because the officers conducted the traffic stop intending to search the vehicle for narcotics. It is well-established that

---

[3] Although the act uses the spelling "marihuana," we use the more common spelling "marijuana" throughout this opinion.

"[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v United States*, 517 US 806, 813; 116 S Ct 1769; 135 L Ed 2d 89 (1996). As mentioned above, a traffic stop is objectively reasonable if an "officer has an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law." *Mazzie*, 326 Mich App at 292 (quotation marks and citation omitted). The traffic stop was objectively reasonable and no Fourth Amendment violation occurred, because LEIN indicated that the vehicle was uninsured and unregistered before the stop occurred. Therefore, defendant's claim for ineffective assistance of counsel lacks merit because pursuing a renewed motion to suppress the methamphetamine would not prevail.

Defendant is also not entitled to remand for a *Ginther*[4] hearing to determine whether his counsel was ineffective for not filing a renewed motion to suppress evidence. A *Ginther* hearing is an evidentiary hearing used to develop a factual record to support a claim of ineffective assistance of counsel. *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973). To persuade us to remand for a *Ginther* hearing, defendant must offer by affidavit or offer of proof a factual basis to support finding that an evidentiary hearing is required to develop a claim of ineffective assistance of counsel. MCR 7.211(C)(1)(a).

Defendant's affidavit fails to establish a factual basis to conclude that a *Ginther* hearing is necessary to prevail on his ineffective assistance of counsel claim, because it identifies no facts to be developed on remand to support his claim that a renewed motion to suppress would have prevailed. As mentioned above, the facts established at trial show that no Fourth Amendment violation occurred. Therefore, we are unpersuaded of the need for a remand.

## B. PROSECUTORIAL ERROR

Defendant argues that the prosecution engaged in misconduct by moving to consolidate his cases into one trial to introduce other bad acts evidence at trial. We disagree.

We review defendant's unpreserved claim of prosecutorial error for plain error affecting a defendant's substantial rights. *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. The defendant carries the burden of persuasion to establish prejudice. *Id*. "The reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Thorpe*, 504 Mich at 252-253.

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Rice*, 235 Mich App 429, 434; 597 NW2d 843 (1999). "Prosecutorial misconduct issues are decided case by case, and the reviewing court must examine the pertinent portion of the record and evaluate a prosecutor's remarks in context to determine whether the

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

defendant was denied a fair and impartial trial." *Id*. at 435. "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007).

MCR 6.120(B)(1) and (2) govern when a trial court will consolidate felony informations once charges have been brought against a defendant.

> (B) Postcharging Permissive Joinder or Severance. On . . . the motion of a party . . . the court may join offenses charged in two or more informations or indictments against a single defendant . . . when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.
>
> (1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on
>
> > (a) the same conduct or transaction, or
> >
> > (b) a series of connected acts, or
> >
> > (c) a series of acts constituting parts of a single scheme or plan.
>
> (2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

Here, defendant claims that the prosecution engaged in misconduct by moving to consolidate his cases into one trial under MCR 6.120. MCR 6.120 clearly allows for two informations to be joined upon "the motion of a party." Thus, as a party to both cases, the prosecution was legally permitted to move to join the cases into one trial. In other words, the prosecution complying with court rules simply does not support a claim of prosecutorial misconduct.

The true gravamen of defendant's argument lies with the trial court's decision to consolidate the cases into one trial. Nonetheless, the trial court did not err by consolidating the cases into one trial. Defendant's charges were clearly related and based on the same conduct. Specifically, defendant provided the police officers with the same false name during two traffic stops only days apart, presumably to avoid his outstanding arrest warrant. This conduct constitutes a series of acts forming a single plan. Moreover, as the trial court noted, consolidation furthered judicial economy. Therefore, defendant has not established that plain error occurred when the trial court granted the prosecution's motion to consolidate the cases into one trial.

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Michael J. Kelly